## WALKER *v.* SEDGWICK.

A party entering into the possession of the land of another, and in subordination to his title, is estopped from denying his grantor's title.

When a purchaser of land does not obtain the title which the deed purported to convey, and the covenants embrace, and he goes into and retains possession under the deed; and the failure of the title goes to the entire consideration paid, or to be paid, for the land, then he must seek his remedy by a recision of the contract, alleging a paramount title in another, and offering to re-deliver possession, and account for the rents and profits.

The vendor's lien on the land conveyed is not lost by his taking the notes of the purchaser for the purchase-money. And the lien equally exists, whether the instrument amounts to a conveyance, or merely to an executory contract.

In a bill in equity to enforce the lien, it is not necessary to allege the issuance of execution, under a judgment at law, previously obtained by the vendor against the purchaser for the amount due, and return of *nulla bona* to sustain the allegation of insolvency.

Return of *nulla bona* on an execution is only one mode of proving insolvency. Any other competent proof would be sufficient.

Where a vendor of land has taken the notes of the purchaser in payment, and brings his action thereon at law, he should, in that action, if at all, unite his equitable claim for a foreclosure of his lien—the same tribunal administering both law and equity.

But in a case where the party brought his separate actions, first at law on the notes, and then 'in equity for a foreclosure, before the adoption of this rule: *Held,* that he be allowed both his legal and equitable remedies, on payment of the costs of the latter suit.

And if the defendant has a legal offset to the notes: *Held,* that he may plead it in the latter suit.

The objection that the proceedings may become too complex by permitting different questions of law and equity to be settled in one suit, is not sufficiently strong to overcome the plain provisions of the statute, and the substantial dictates of justice.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This case has been several times before this Court, but went off upon points not involving the merits. The plaintiff Walker was in possession of a farm, and certain personal property thereon; all of which he sold *in terms* to defendant Sedgwick for about seven thousand two hundred dollars. The writing was not a sealed instrument, and was not acknowledged, but was signed by both parties. In the instrument, Walker is said to sell and convey to Sedgwick the property. Under the written instrument, Sedgwick went into, and still retains possession of the land and the personal property. Some five thousand dollars of the purchase-money was paid, and two notes given for the balance. Suit was brought upon the notes and judgment had, but no execution was' ever issued thereon. The plaintiff then filed his bill in equity to enforce his "vendor's lien" against the land, in which the insolvency of the defendant is substan-

tially alleged. The defendant denied that plaintiff had any title to the land, alleging that it belonged to the United States, and also set up that there was a crop of grain growing upon the land, which was removed by one Myers, to whom the plaintiff had sold the crop, before he sold the land to defendant, and that plaintiff had warranted the title to the premises against all persons claiming under him. The defendant asked that the value of this crop might be deducted from the amount of the judgment. Upon the trial before the Court without a jury, the insolvency of defendant was clearly shown, as well as the other facts alleged by plaintiff. Defendant gave no evidence in support of his affirmative allegations, but moved the Court for a nonsuit upon these grounds:

1. No execution was issued.

2. The lien, if any, was waived by the suit upon the notes.

3. The notes were executed for balance of purchase-money of land and other property, and no vendor's lien could exist.

This motion the Court sustained, and the plaintiff appealed.

*D. W. Perley* for Appellant.

To grant a nonsuit in an equity case is a novel and extraordinary proceeding.

The Court should have decided the case upon the evidence and either have dismissed the bill for want of sufficient proof to sustain it, or else have entered a decree enforcing the lien.

It is to be hoped that this case is now before this Court for a final adjudication on the merits, and this Court will direct the Court below either to dismiss the bill, or to enter a decree enforcing the lien.

1. That the respondent, Sedgwick, bought the property in controversy from Walker, and obtained possession thereof from him, under a deed or contract.

2. That he gave his notes for the purchase-money, on which judgment was afterwards obtained against him, that he is still in possession of the property, and has never paid or satisfied either said notes or judgment.

3. That with the exception of this very property which he now claims as a homestead, he has no other property whatever within reach of an execution, but is totally insolvent and bankrupt.

And as a proposition of law, from the above facts, the appellant contends that he is justly entitled to a decree enforcing a vendor's lien against the property, and that the Court below erred in not so deciding.

In support of the first and second points of fact relied on, the Court is referred to the deed—a conveyance from Walker to Sedgwick.

The attention of the Court is next directed to the judgment-

roll, in the action brought by Walker v. Sedgwick, on the notes given for the purchase-money.

The complaint in this case was sworn to, consequently a verified answer was required and this verification was made by Sedgwick.

This answer is an admission by the defendant, Sedgwick, under oath, of the following facts:

1. That the notes then sued on were given to Walker for the two quarter-sections of land and improvements on which the lien is now sought to be enforced.

2. That Walker not only sold him the land and improvments, but also covenanted to warrant and defend the title.

The attention of the Court is next directed to the answer in this action. It distinctly admits the purchase of the property from Walker, and all other facts necessary to be admitted or proven, to show a right to the lien claimed.

The question of law now arises, upon the facts proven, as to whether the plaintiff is entitled to have a vendor's lien enforced against the property.

The appellant contends that he still has a lien, and that the Court should enforce it.

And, in the first place, it is argued that the sale of Walker to Sedgwick was of both land and personal property; that it was one entire contract; that the whole consideration was over seven thousand dollars, and that no lien can be enforced for a part of the purchase-money.

But it was the intention of the parties, at the time the sale was made, that the notes given were to be for the purchase of the land and improvements, and not the personal property. This fact is sworn to, as above shown, by Sedgwick himself, and no opposing evidence appears.

The next objection is that the vendor's lien was waived, by taking notes for the purchase-money, and by afterwards obtaining a judgment on said notes.

The proposition cannot be maintained, as can be shown by abundant authority, see the following cases: Garrison v. Greene, 1 J. Ch. R., 308; Buscol v. Bronaugh, 1 Texas, 326; Eldridge v. McClure, 1 Yerger, 84; Warren v. Van Olstyne, 2 Paige Ch. R., 513; 2 Story Eq. J., § 1224 to 1233.

Taking a note for the purchase-money does not affect the vendor's lien, and if part of it be paid, the lien remains for the residue.

The payment of the money will alone release the land from the vendor's lien. Truebody v. Jacobson, 2 Cal. R., 269; see Solomon v. Hoffman, 2 Cal. R., 138.

In the case of Allen v. Phillips, 4 Cal. R., 256, it was held that after a judgment at law, for the purchase-money, and a sale

Walker v. Sedgwick.

of the property under execution, that a vendor's lien could be enforced by a separate proceeding in equity.

Another point of defence relied on by defendant is that the land was public land and that the plaintiff had no right or title to sell the same.

In reply to this objection, we say:

1. There is no proof of such being the fact on the record.

2. If it did so appear, it would not avail the defendant.

In an action for the purchase-money of land, conveyed without covenants, want of title in the vendor is no defence unless the vendor has been evicted. Fowler v. Smith, 2 Cal. R., 39; Solomon v. Hoffman, 2 Cal. R., 138.

But when land is sold, with covenants of warranty, and suit is brought for the purchase-money, and defendant pleads that plaintiff had no title, he is bound to aver and prove paramount title in another, and failing in this, his defence is defective. Thayer v. White, 3 Cal. R., 228.

And when the defendant contends that the notes sued on were given for a lot to which the plaintiff had no title, he must not only show paramount title in another, but he must offer to re-deliver possession, and account for the rents and profits. Riddle v. Blake, 4 Cal. R., 264.

The defendant having entered into possession of the land, claiming under and in subordination to his title, is estopped from questioning it. Hoen v. Simmons, 1 Cal. Rep., 119.

The next ground of defence set up is:

That he was evicted of part of the crop of barley growing on the land at the time he purchased, and therefore this lien ought not to be enforced.

To this I answer:

1. There is no proof of any such eviction.

2. He must resort to an action on this warranty. Jackson v. Norton, July Term, 1855.

The last point relied on by defendants and worthy of notice, and the one on which appears most to have influenced the Court below, is this:

That the plaintiff could not proceed in equity until he had exhausted his remedy at law, and proved it by an execution issued and a return of *nulla bona*.

The appellant contends that this is entirely unnecessary.

A return of *nulla bona* is only one mode of proving insolvency. But this fact may be proved in many other ways.

The case of Allen v. Phelps, above cited, 4 Cal. R., 256, directly overthrows the doctrine contended for.

The authorities are all clear and uniform, that none of the defences set up can avail the vendee.

The following cases are referred to: Truebody v. Jacobson, 2 Cal. R., 269; Hoen v. Simmons, 1 Cal. R., 119; Salmon v. Hoff-

man, 2 ib., 138; Fowler v. Smith, 2 Cal. R., 39; Riddle v. Blake, 4 Cal. R., 264; Dillon v. Byrne, 5 Cal. R., 485; Skaggs v. Nelson, 25 Miss., 88; Clower v. Rawlings, 9 S. & M., 122; Hardman v. Cowen, 10 S. & M., 486; Mackreith v. Simmons, 15 Vesey, 330.

*Otis L. Bridges* for Respondent.

The statement of the case shows that appellant had no title to the land, that it was United States land; that he had nothing at best, but a mere possessory claim to his actual improvements.

All he had, and all he parted with, was personal property, and when he gave up possession thereof, he parted with his lien.

A vendor's lien only exists when an estate is conveyed by deed, duly executed. The party must have title, etc.

There was no conveyance here of real property, and our statute contemplates a lien to exist in the vendor only when he makes a conveyance of real property, or conveys an estate.

What is real estate or personal property? 3 Kent's Com., 401.

A man enters upon such land, as the case shows, and makes a few improvements, and he sells the improvements and leaves; does a vendor's lien exist, and can the State law enforce it?

The case shows there was some two thousand dollars, or more, of personal property conveyed at the time, and of its being personal property there can be no doubt, and that respondent paid at the time over five thousand dollars, whether for the personal property, or what is called the real property, can the Court determine this?

And what are the principles of equity on this subject? And as to the application of the payment of five thousand dollars, when the parties have been silent, the Court will make the application according to the justice and equity of the case.

But the appellant here was bound to exhaust his remedy at law, before he could bring his bill to have a decree of sale upon a lien.

And to have a forfeiture of an estate, the Court will apply this payment to the land.

It seems the notes were sued, and no allegation as to any lien and judgment obtained; can a party bring another suit to enforce the lien, without exhausting his remedy at law, and the former suit? It is submitted he cannot.

BURNETT, J., delivered the opinion of the Court—FIELD, J., concurring.

The defendant having entered into possession of the land under the plaintiff, and in subordination to his title, is estopped from denying it. 1 Cal. Rep., 120, 470; Ellis v. James and others, April, 1857.

When the purchaser does not obtain the title which the deed purports to convey and the covenants embrace, and he goes into

Walker *v.* Sedgwick.

and retains possession under the deed, and the failure of the title goes to the entire consideration paid, or to be paid, for the land, then he must seek his remedy by a recision of the contract, alleging a paramount outstanding title in another, and offering to re-deliver the possession, and account for the rents and profits. In such case he cannot be permitted to retain possession of the land, and denied the title under which he entered. 2 Cal. Rep., 286; 4 Cal. Rep., 266. The question whether the title of the property is in the United States, or in some one else, cannot be raised in this case. Nor can either of the parties object, for the purposes of this suit, that the instrument was not in law a conveyance *in presenti.* They have both treated it as such, and possession was had under it. 2 Cal. Rep., 141. Both parties being estopped from denying the title, the lien of the vendor cannot be affected by giving the notes. 2 Cal. Rep., 269. And the lien equally exists whether the instrument amount to a conveyance, or merely to an executory contract thereafter to convey. 1 Leading Cases in Equity, 263.

The objection that there had been no execution issued and returned *nulla bona,* was not well taken. This return is only one *mode* of proving insolvency. Any other competent proof would be equally efficient. The law does not require a vain thing, and to issue an execution against a person insolvent would be idle. Heyneman and others *v.* Dannenberg and others, October, 1856.

So, the objection, that the consideration of the notes was made up of *both* personal and real estate, we think not well taken. The plaintiff alleged in his complaint that the notes were given for the *land,* and this allegation is nowhere denied in the answer. The fact stands admitted by the pleadings, and the defendant could not raise the question.

The most serious objection made by the defendant is, that the plaintiff waived his lien by his suit upon the notes.

Under a system where equity and law were administered in different suits, and in different tribunals, it has uniformly been held, that a mortgagee might first sue at law upon the note, and afterwards proceed in equity to foreclose the mortgage. The remedies were different, and while the party could not proceed upon both at the same time, he might make his election, and first proceed at law and then afterwards in equity. And the privilege of two remedies was as open to a vendor, as to a mortgagee.

But under our system of practice, where law and equity are both administered by the same tribunal, and may be in the same suit, the reason of the former rule does not exist, and the rule itself should cease. Why should the purchaser be harassed with the costs of two separate suits, to obtain the end that might be as well reached by one? The whole spirit of our system, and

its leading intent, is to avoid a multiplicity of suits. This is the best feature in the system. All the party has to do is to make a concise and true statement of the *facts* that constitute his cause of action and defence, and then the Court will give him such relief, as by the rules of law, or equity, he may be entitled to receive.

In this case, the plaintiff should have stated all the facts, in the suit upon the notes, and asked for the proper relief, and the Court could have given him such a decree as he was entitled to have.

But as this is only a question of practice, and one that was not settled at the time the first suit commenced; and the only injury that the defendant can suffer will arise from the costs of the second suit, we will not turn the plaintiff out of Court for that reason.

Another important question arising upon the record, has regard to the affirmative defence set up in the answer. The plaintiff, in the instrument referred to, warranted the title to the land against all persons claiming through or under him. The instrument was dated twenty-sixth November, 1852. It is alleged that a volunteer crop of barley was growing upon the premises, and that plaintiff had previously sold the same to one Myers, who entered, with the connivance of the plaintiff, and cut and removed the crop. The defendant insists that this was a violation of the covenants, and that he has the right to set-off the damages against the judgment. It is not alleged that plaintiff is insolvent, or that a suit for damages would be unavailing.

The previous sale of the crop to Myers would clearly come within the covenant, and the plaintiff would be liable for the damages sustained; and the only question is, whether the defendant can avail himself of such a defence, in an action upon the notes. If he could have set it up in the suit upon the notes, we will not, under the circumstances of this case, deny him the right to do so now. The relaxation of the rule, in favor of the plaintiff, must be equally extended to the defendant.

As before stated, the leading intent of our Practice Act was, to avoid a multiplicity of suits. And hence, a defendant may set up any "cause of action arising out of the transaction set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action." § 47.

Where the purchaser still retains possession, and the only cause of complaint is a paramount outstanding title in another, he has not yet sustained any damage, as that outstanding title has not yet been, and may never be, enforced against him, and thus his adverse possession may ripen, by time, into a perfect title. But where the purchaser, under a deed with covenants, has been evicted by paramount title, before the purchase-money has all been paid, it is not perceived why he could not set up

Walker v. Sedgwick.

the damages suffered by him, against the claim for the purchase-money. So, if the purchaser has been compelled, for his own protection, to discharge an incumbrance upon the premises, created by the vendor himself, he may equally set it up, so far as it goes, whether there had been any eviction or not. In the present case, the damages alleged to have been sustained were past, and not merely prospective, or doubtful.

In this case, the proceeding on the part of the plaintiff is in equity, and the defence at law.

And as a jury is allowed in the one case, and denied in the other, it may, at first appearance, present some difficulty. But there is really no theoretical or practical difficulty in the case. That part of the case which involves questions of fact for the jury, may be submitted to them, and the other portion reserved for the Chancellor.

And the objection that the proceedings may become too complex by permitting different questions at law and in equity to be settled in one suit, though founded in much plausibility and some truth, is not sufficiently strong to overcome the plain provisions of the statute, and the substantial dictates of justice. For whatever may be the views of jurists and lawyers, the plain practical truth is this : That every man of good business sense would much prefer setting off his claim against that of another, rather than first pay the money out of his own pocket, and then risk getting it again from the pocket of his adversary. Insolvency may exist in a thousand cases where its existence cannot be shown at the time, and may often occur in the future before the party could possibly recover in his cross-action. Parties were often ruined by the practical operation of the old rule, which seems to have been founded more in the convenience of Courts than upon the true principles of justice. Like the practice of a justice of the peace, who never heard any testimony except for the plaintiff, upon the alleged ground that the contrary practice of hearing the testimony on both sides tended to produce doubt and confusion in his own mind, the former rule may have been more simple, but still it was all on one side, and practically defeated the very ends contemplated by the law itself. Our Practice Act has wisely provided a remedy for this great evil, and has placed parties upon an equal footing with respect to each other. It may possibly, in some instances, increase the difficulties in particular cases; but its general operation cannot fail to be more beneficial and just to the parties. Under the operation of the statutory rule, neither party is compelled to advance money, in the first instance, and then sue to recover it back again, in the second.

Under the view we have taken of this case, the plaintiff is entitled to a decree for the sale of the premises, subject to be reduced in amount by whatever damages the defendant may

27

prove himself entitled to recover, if any. And as the plaintiff failed to state all the facts, and seek all the relief he was entitled to in the suit upon the notes, he should be taxed with the costs of this suit accruing in the Court below, and the plaintiff will be entitled to the costs, upon appeal.

For these reasons, the judgment of the Court below is reversed, and the cause remanded for further proceedings, in which the only proof required will regard the question of alleged damages suffered by the defendant. The case on the part of the plaintiff having been fully established, the Court below will enter a decree for the amount of the former judgment upon the notes, after deducting the amount of damages, if any, which may be found for the defendant.