[No. 18389. Department Two.—July 6, 1895.]

## JACOB GARD, SR., APPELLANT, *v.* JACOB GARD, JR. ET AL., RESPONDENTS.

JURISDICTION OF EQUITY—ENFORCEMENT OF MORAL OBLIGATIONS—CASES OF HARDSHIP.—A court of equity cannot, because of individual hardship, reject from its consideration principles and rules upon which the right to relief has always been based, and the enforcement of moral obligations merely is not within the domain of equity or law.

ID.—VENDOR'S LIEN.—A vendor's lien is only permitted as security for unpaid purchase money, and not for any other indebtedness or liability, and may only exist where there is a certain, ascertained, absolute debt, owing for the purchase price, and not in behalf of any uncertain, contingent, or unliquidated demand.

ID.—WAIVER OF LIEN—CONTRACT FOR LIFE SUPPORT.—Where an old man
executed and delivered a deed of all his property to his son for the
named consideration of nine hundred and fifty dollars he waived and
lost all right to the enforcement of any vendor's lien to that amount by
subsequently taking from his son a written agreement that the son
would pay to him monthly during his natural life three-fourths of all
sums received for rent of the premises, or fifteen dollars monthly dur-
ing his natural life, in case of personal occupancy of the premises by
the son.

ID.—REMEDY FOR BREACH OF CONTRACT—ACTION FOR DAMAGES.—The only
remedy open to the father for breach of the contract on the part of
the son is an action for damages therefor.

APPEAL from a judgment of the Superior Court of
Yuba County.   E. A. DAVIS, Judge.

The facts are stated in the opinion of the court.

*W. H. Carlin*, for Appellant.

The agreement was to pay a definite sum monthly for
life during the life of the father, and it is the policy of
the law to protect, maintain, and enforce the lien of the
vendor, for the unpaid purchase price of land, notwith-
standing an absolute conveyance. (*Gallagher* v. *Mars*,
50 Cal. 23; *Salmon* v. *Hoffman*, 2 Cal. 138–42; 56 Am.
Dec. 322; *Burt* v. *Wilson*, 28 Cal. 632; 87 Am. Dec. 142;
*Sparks* v. *Hess*, 15 Cal. 186; *Fitzell* v. *Leaky*, 72 Cal. 477–
84; *Hill* v. *Grigsby*, 32 Cal. 55.)   The lien is not waived,
in the absence of an express agreement, by the taking
of security for the purchase money. (*Baum* v. *Grigsby*,
21 Cal. 172; 81 Am. Dec. 153; Civ. Code, sec. 3046.)
A homestead subsequently acquired is subordinate to
the lien of the vendor for the unpaid purchase money.
(*McHendry* v. *Reilly*, 13 Cal. 75; *Williams* v. *Youug*, 17
Cal. 403.)   As to the existence, extent, and conditions,
of a vendor's lien, see 2 Devlin on Deeds, section 1249
to 1272.

*J. H. Craddock*, for Respondents.

No vendor's lien exists in this case.   (3 Pomeroy's
Equity Jurisprudence, sec. 1258, and cases cited; White
and Tudor's Leading Cases in Equity, p. 468, et seq;

*Peters* v. *Tunel*, 43 Minn. 473; 19 Am. St. Rep. 252; *Arlin* v. *Brown*, 44 N. H. 102; *Brawley* v. *Catron*, 8 Leigh, 522; *Hiscock* v. *Norton*, 42 Mich. 320; *Clarke* v. *Royle*, 3 Sim. 499; 1 Perry on Trusts, 4th ed., sec. 235; 2 Jones on Liens, sec. 1071; Gibson, J., in *Kauffelt* v. *Bower*, 7 Serg. & R. 64; 10 Am. Dec. 428.)

HENSHAW, J.—Appeal from the judgment rendered after demurrer sustained, and plaintiff's refusal to amend.

The action is to have declared and enforced a vendor's lien upon land conveyed by plaintiff under the following state of facts disclosed by the complaint. In 1890, plaintiff, an old man, executed and delivered a deed of the land, all the property he owned, to his son, for the named consideration of nine hundred and fifty dollars. It was agreed that as between themselves the deed should not be operative until the mode, manner, and time of payment should at some indefinite future date be agreed upon. Plaintiff remained in possession of the land and exercised full dominion over it after the making of the deed until 1893, when the defendant took possession and control of the land under the following agreement: "For value received from Jacob Gard, Sr., I, Jacob Gard, Jr., hereby covenant, promise, and agree to pay to said Jacob Gard, Sr., monthly during his natural life, three-fourths of all sums by me received for rent of the premises known as the 'Seven Mile House,' situate on the public highway leading from Marysville to Brown's valley, in Yuba county, state of California, and designated and described in a certain indenture of deed bearing date May 6, 1890, made and delivered by said Jacob Gard, Sr., as grantor, to myself as grantee, and recorded in volume 39 of deeds, records of Yuba county, at pages 153 and following, which said premises are now under lease to one George J. Crossley at the monthly rental of twenty dollars. And in case I should occupy said premises myself, instead of renting the same, then, and in such case, I covenant to pay the said Jacob Gard, Sr.,

the sum of fifteen dollars monthly during his natural life. Said sums to be paid monthly on the fifteenth day of each and every month at the Northern California Bank of Savings, Marysville, California, to the credit of said Jacob Gard, Sr.

[SIGNED]          " JACOB GARD, JR."

A short time after the date of this agreement defendant entered into the personal occupancy of the premises and has ever since continued in such occupancy. He has failed after demand to comply with his agreement, and has refused to pay to plaintiff the monthly sum of fifteen dollars or any other sum. His wife, with knowledge of all the facts, has placed a homestead upon the property. The defendant son has no property except that so acquired from the father, and the father, eighty years old, feeble and decrepit, has no means of subsistence unless the sum of fifteen dollars a month can be made a charge upon the property.

Such is the tale told by the complaint, and in this consideration it must be taken as true. It is the tragedy of Lear in a country setting, with the "Seven Mile House" for the revenues of a kingdom, and a county pauper for the distracted king.

The case is one which appeals strongly to that sense of "natural equity" upon which it is sometimes said a vendor's lien rests, but, at the same time, a court of equity, no more than a court of law, can, because of individual hardship, reject from its consideration the well-considered and firmly established principles and rules upon which the right to the relief asked has always been based. The enforcement of purely moral obligations is not within the domain of equity or law. An outlawed debt still holds the debtor under moral obligation, but no court can compel its payment.

" The grantor's lien, wherever recognized, is only permitted as a security for the unpaid purchase price, and not for any other indebtedness or liability. There must be a certain, ascertained, absolute debt owing for the purchase price; the lien does not exist in behalf of

any uncertain, contingent, or unliquidated demand."
(3 Pomeroy's Equity Jurisprudence, sec. 1251.)

This rule as deduced by Professor Pomeroy has an
overwhelming weight of authority in its support. (See
note to *Mackreth* v. *Symmons*, 15 Ves. 329, in 1 White &
Tudor's Leading Cases in Equity, 4th Am. ed., 468;
*Peters* v. *Tunel*, 43 Minn. 473; 19 Am. St. Rep. 252;
Perry on Trusts, 4th ed., sec. 235; 2 Jones on Liens,
sec. 1071.)

Conceding, without deciding, that plaintiff had a
vendor's lien upon the property for the sum of nine
hundred and fifty dollars down to the time of his enter-
ing into the agreement as above set forth in 1893, he
then and thereby lost his right to such lien. And this
is so whether the last-named agreement be considered
as a substitute by novation for the original indebted-
ness, or merely as a consummation, within the contem-
plation of its terms, of the original contract of sale.
If the last agreement be treated as in novation of the
original indebtedness the lien is at once extinguished
(3 Pomeroy's Equity Jurisprudence, sec. 1252); while,
if considered as but the completion of the unconsum-
mated original agreement, it is open to all objections of
uncertainty and contingency as to time, amount, and
mode of payment.

The learned judge of the trial court, in an able opin-
ion sustaining the demurrer, makes this clear and for-
cible presentation of the matter, which we adopt:

" But it is claimed by counsel for plaintiff that this
agreement amounts simply to a written acknowledg-
ment of defendant's indebtedness to plaintiff for the
amount of the purchase price, $950, and his promise to
pay it. I do not see how it is possible to sustain that
contention. The agreement is not that defendant shall
pay the purchase price of the granted premises, which
is $950, or any other or definite or fixed sum. His
agreement to pay any thing was wholly contingent, and
dependent upon the uncertainty of a human life. If
plaintiff had died the next moment after receiving the

agreement the obligation to pay would have died with him, and nothing would have been paid under it. But it was even possible under the agreement that nothing should be paid plaintiff even though he should live a term of years, for the promise is only to pay provided the defendant, Gard, occupied the premises personally, or received rents from them. He might never occupy them himself, and he might not receive any rents. The premises might remain vacant, or the tenant might fail to pay rent. Again, it might be possible that under the agreement the defendant would be compelled to pay a sum largely in excess of the alleged purchase price; it might be double that amount, or even more, depending upon the uncertain contingency of the length of plaintiff's life, the rental and receiving of rents, or the occupancy by the defendant. I cannot see how it is possible to conclude that this agreement was, in effect, or in the intention of the parties, an acknowledgment of an indebtedness for the purchase price of the granted premises, and a promise to pay it. On the contrary, it seems clear that it was an independent and collateral contract or covenant, speculative in its character, and designed, if the original debt still existed, to cancel and extinguish it. It was speculative, because under it the plaintiff might receive a sum largely in excess of the purchase price of the land in the form of an annuity, while, on the other hand, the defendant might satisfy his $950 indebtedness by the payment of little or nothing. It seems to me that no argument is required to show that such an agreement, by no transposition whatever, can be made the basis of a lien of a vendor. Under the agreement the defendant became personally bound only and subject to an action for damages for breach of his contract, the only remedy open to plaintiff. The case is analogous to that of *Payne* v. *Avery*, 21 Mich. 524, where the court held that while the grantor, upon the facts, might be able to maintain a remedy at law for damages caused by the grantee's failure to comply with his contract, such damages were too uncertain

in their character to form the subject of a vendor's lien."

The judgment appealed from is affirmed.

McFARLAND, J., and TEMPLE, J., concurred.