**TRANSDUCER PATENTS COM-
PANY, Appellee,**

v.

**The RENEGOTIATION BOARD,
Appellant.**

Nos. 72-2792, 72-2798.

United States Court of Appeals,
Ninth Circuit.

Sept. 18, 1973.

As Modified on Denial of Rehearing
March 27, 1974.

Voegelin & Barton, Robert M. Barton, Richard F. Oetting, Los Angeles, Cal., for appellee.

Irving Jaffe, Acting Asst. Atty. Gen., Irwin Goldbloom, Raymond D. Battocchi, Dept. of Justice, Washington, D. C., for appellant.

## OPINION

Before BROWNING and WALLACE, Circuit Judges, and PECKHAM,* District Judge.

PECKHAM, District Judge:

The question raised by this appeal is whether the Tax Court's characterization of a transaction as a sale rather than a license and accordingly outside

---

* Honorable Robert F. Peckham, United States District Judge, Northern District of California, sitting by designation.

the purview of the Renegotiation Act of 1951, 50 U.S.C.A.App. § 1211 et seq. (1970), was an arbitrary and capricious finding or otherwise inconsistent with law. See Act of July 3, 1962, Pub.L. No. 87–570, 76 Stat. 134. For the reasons set forth below we affirm the decision of the Tax Court.

The Renegotiation Act created the Renegotiation Board (the Board). 50 U.S.C.A.App. § 1217(a) (1970). It empowered the Board to renegotiate certain contracts or subcontracts between Departments of the federal government and defense contractors, and to recoup thereby certain excessive profits. As the Act was originally written an appeal from a determination by the Board was reviewed *de novo* by the Tax Court. The Renegotiation Act was amended on July 1, 1971, 50 U.S.C.A.App. §§ 1218 and 1218(a) (Supp. I, 1971) to provide that an appeal from the Board's determination be taken to the United States Court of Claims. By the savings provision of that amendment and the determination of the Chief Judge of the United States Tax Court, this case was retained by the Tax Court.

The original Act provided for a very narrow scope of review of the Tax Court's decisions, if such matters could be reviewed at all by this court. *Cf.* French v. War Contracts Price Adjustment Board, 182 F.2d 560 (9th Cir. 1950). In 1962, after an extensive survey of the scope of review, Congress decided to broaden the scope of review. Act of July 3, 1962, Pub.L. No. 87–520, 76 Stat. 134; 1962 U.S.Code Cong. & Admin.News, pp. 1828, 1832. This amendment, which governs the scope of review in this case, provided that Tax Court decisions should be reviewed in the same manner as that of a district court in a civil case tried without a jury, except that findings of fact by the Tax Court shall be conclusive unless arbitrary and capricious. Thus it was the intent of Congress to provide a scope of review of factual determinations still narrower than that required by Rule 52(a) of the

Federal Rules of Civil Procedure, the familiar clearly erroneous standard. Congress further provided that the existence or extent of excess profits is a question not subject to review. This in the words of the Senate Report is because:

> Your committee believes that the ultimate question of the extent of the excessiveness of profits or the existence thereof, requires the exercise of judgment which is of such a nature that the appellate courts should not be permitted to substitute their judgment for that of the Tax Court. 1962 U.S. Code Cong. & Admin.News, p. 1833.

From an adverse determination in the Tax Court the Board appeals. It asserts as error the Tax Court's determination that the transaction in question was a sale. The Board claims first that viewing the transaction as a whole, the Tax Court's determination was incorrect. The Board's second claim is that as a matter of law if the transferor of a patent retains a right to recapture the patent upon default of payment, that such a transaction is subject to renegotiation. For this proposition the Board cites one of its interpretive rulings to that effect.

The factual context of the transaction is fully set forth in the Tax Court's opinion. Briefly stated the transaction was as follows: Statham Instruments, Inc. was the licensee of five patents owned by Curtiss-Wright. Because Statham Instruments was without sufficient funds to purchase the patents, its major shareholders formed a limited partnership called Transducer Patents Company (Transducer), and purchased the patents. Transducer and Statham then entered into an agreement on November 4, 1952 granting to Statham a nonexclusive temporary license in the patents and provided Statham with three options for the future.

Option A would grant Statham license on some, but not all, of the patents. Option B would grant Statham, reserving full legal title in Transducer, an exclu-

sive license of all five patents. Option C gave Statham the right to purchase Transducer's entire right, title and interest in the patents by paying a lump sum. On May 27, 1953 Statham exercised Option A. All parties agree that this was a mere license. Option B was exercised on November 4, 1953. The agreement entitled "Exclusive License Agreement" is the crux of the case. Transducer granted to Statham an exclusive right to make, to sell, and to use the patented transducers in return for 8% of the licensed gross income, later reduced to 5%. Statham agreed to abide by all the terms of the earlier (1952) agreement "not superseded hereby." Transducer reserved to itself a "lien" upon the licenses granted and could terminate the agreement upon default by Statham.

The Tax Court held that this agreement, though in terms a license, was in actuality a sale. In so holding, it applied well-settled case law. In Waterman v. Mackenzie, 138 U.S. 252, 11 S. Ct. 334, 34 L.Ed. 923 (1891), the court said an agreement which grants an exclusive license to make, to sell, and to use, is a sale of the patent even if it is called a license. An agreement which purports to be a sale which does *not* grant all three rights is, on the other hand, a mere license. The case of Littlefield v. Perry, 88 U.S. 205, 22 L.Ed. 577 (1874) holds specifically that the fact that compensation is to be paid by a percentage of the gross licensed income, or the existence of a term providing for recapture of the patents in default of payment does not convert an otherwise valid assignment into a license. The Third Circuit Court of Appeals in Hook v. Hook & Ackerman, 187 F.2d 52 (3d Cir. 1951), was an even clearer illustration. That case involved an agreement termed on its face a license, which granted an exclusive license to make, use, and sell the patented item. The agreement was held a sale, not a license, although it contained provisions for payment of royalties and recapture on default.

The Board urges that the Tax Court failed to give proper weight to the fact that Option B allowed Transducer to retain legal title to the patents, that Transducer retained a right to recapture the patents in the event of default of payment, and to the fact that Option C was not exercised. Option C would have allowed Statham to purchase Transducer's entire interest in the patents. The Tax Court found that the exercise of Option B vested in Statham the exclusive right to make, sell, and use under the patents, the right to grant licenses to others, to make, sell or use without the consent of Transducer, the right to assign exclusive rights, the right to sue for infringement in its own name without the joinder of Transducer, and the right to exclude Transducer from making, selling, or using the patented devices. (C.T. 515, 516, 517).

The Tax Court, upon weighing all of the factors, concluded that the transaction was a sale and therefore not a contract subject to renegotiation.

In Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) the court found that the question of whether or not a transfer was "a gift" and taxable as such within the meaning of the tax statutes "must be based ultimately on the application of the fact finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." *Id.* at 289, 80 S.Ct. at 1198. *Accord,* Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171 ("ordinary and necessary business expense"). The Court went on to hold that because of the nature of the finding, it should not be disturbed unless clearly erroneous. 363 U.S. at 291, 80 S.Ct. 1190. See Fed.Rules Civ.Proc., 52(a).

■■ We believe that the characterization of a transaction as a sale is a question which also must ultimately turn on the fact-finding tribunal's experience in light of the totality of the facts in each case. Additionally, we note that

Congress provided for even more deference to the Tax Court's ability to make such findings in Renegotiation Act cases. Act of July 3, 1962, Pub.L. No. 87–520, 76 Stat. 134. The Tax Court's finding that the transaction in question was a sale cannot be set aside unless arbitrary and capricious. This standard is not altered merely because the evidence presented to the trial court was largely documentary. Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962); W. S. Shamban & Co. v. Commerce & Industry Insurance Co., 475 F.2d 34 (9th Cir. 1973). We cannot find that the Tax Court's careful analysis of all the factors resulted in a determination which was arbitrary and capricious.

The Board, however, argues that it has promulgated Renegotiation Ruling No. 5, 39 C.F.R. § 1499.1–5, which is dispositive of the case.

The pertinent provisions of the Ruling are as follows:

"(b) for renegotiation purposes, different rules prevail. The renegotiability of transactions involving patents is determined exclusively by the provisions of Section 103(g)(2) of the Act. As indicated in paragraph (a)(2) of this section, retention of legal title or of a right of recapture causes the transaction to fall short of a present unconditional transfer of title, and such a transaction is subject to renegotiation. On the other hand, retention of a vendor's lien is not inconsistent with an absolute sale and will not of itself subject the transaction to renegotiation."

We must recognize that these transactions involved the conveyance of rights to five patents where the purchase price was measured by a percentage of gross income attributable to sales of the patented devices by Statham Instruments over a finite period, the life of the patents. The purchase price was not a sum certain payable in installments over a stated period of time. The Renegotiation Ruling permits a vendor's lien in connection with a sale of patents but dif-

ferentiates "a right of recapture". The Board here, and the Tax Court below, assumed that the phrase "right of recapture" relates to a situation where the vendor has the right to revest in himself title to the patents in the event of a failure by vendee to perform its covenant to pay the purchase price. The Board here contends that such a right is distinguished from a vendor's lien which limits the security interest in the patents to insure the payment of the balance of the purchase price. However, where the purchase price is payable in terms of the percentage of gross income based upon exploitation of the patented devices for the balance of the life of the patents, the concept of vendor's lien has no meaning unless it is construed as permitting the vendor, upon default by the vendee, to recover the exclusive right to make, use and sell the patented devices so as to be able to resell such right.

In California, a "vendor's lien" is limited to a transaction involving the sale of real property. California Civil Code § 3046. Furthermore, a vendor's lien does not exist unless there is an ascertained, fixed consideration of money whereby there arises a certain absolute debt of the purchaser to the vendor. Gard v. Gard, 108 Cal. 19, 40 P. 1059 (1895). Thus, under circumstances involving a sale of a patent for a price dependent upon a percentage of sales of the patented invention, there could be no "vendor's lien" as such in California. To give effect to the Board's Ruling, the term "vendor's lien" cannot be limited to the strict definition of vendor's lien as applied in California, but rather must be given a broader interpretation so as to permit a vendor to retain a security interest in the patent to protect himself against possible default by the purchaser in the payment of the royalties based upon sales of the inventions.

An examination of the provisions of the November 4, 1953, exclusive license agreement demonstrates that the parties intended to, and did, accomplish nothing

more than the reservation of security interest in the patent to the licensor—Transducer. Paragraph 9 of that agreement states specifically:

> LICENSOR reserves unto itself and is hereby granted by LICENSEE a lien upon all the rights, privileges and licenses hereby granted to secure the prompt payment by LICENSEE of the royalties herein reserved . . ."

(Emphasis added). [C.T. 517].

A realistic and proper interpretation of paragraph 9, and the one we assume was given it by the Tax Court leads to the conclusion that it was intended to reserve a security interest in the patents for the benefit of the licensor to protect itself in the event of the failure of the licensee to make the royalty payments provided therein. Further, this construction is consistent with the interpretation of the Renegotiation Board's Ruling No. 5 insofar as it permits a security interest in the nature of a vendor's lien. The provisions of paragraph 9 which state the remedies of the licensor upon breach by the licensees of the royalty payment provisions are incidental to and in furtherance of the lien created in favor of the licensor as security of payment of the royalties. This construction is particularly appropriate in light of the comment of the Supreme Court in Littlefield v. Perry, 88 U.S. (21 Wall.) 205 at 220, 22 L.Ed. 577 at 579 (1874), where the Court stated:

> The agreement to account and pay formed part of the consideration of the assignment, and was in effect an agreement to pay at a future time a sum to be determined by the number of articles made and sold. For the nonpayment or other nonperformance a forfeiture might be enforced as for condition broken, but until it was enforced the title granted remained in the assignees.

In light of the above this court cannot determine the Tax Court's findings to be arbitrary and capricious. Nor can this court find that the decision below was other than consistent with law.

The decision of the Tax Court is affirmed.