**In re Theodore Steven ROOSEVELT, Debtor.**

**FINALCO, INC., Appellant,**

**v.**

**Theodore Steven ROOSEVELT, Appellee.**

BAP No. CC–93–2221–VHB.

Bankruptcy No. LA90–28723–WL.

Adv. No. AD91–60491–WL.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Sept. 21, 1994.

Decided Jan. 12, 1995.

---

1. Hon. Philip H. Brandt, Bankruptcy Judge for the Western District of Washington, sitting by designation.

Russell H. Rapoport, Encino, CA, for Finalco, Inc.

Theodore Steven Roosevelt, in pro. per.

Before VOLINN, HAGAN and BRANDT,[1] Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

More than one year prior to filing a chapter 7 petition, the debtor and his wife trans-

muted their joint ownership in their residence into the separate property of the wife. No contemporaneous recording of the transaction was performed, but within one year of the bankruptcy filing, the debtor executed and recorded a quitclaim deed to the residence in favor of his wife. The bankruptcy court found that the debtor transferred the residence to hinder, delay, or defraud creditors. The court concluded that while the deferred recording could be a basis for avoiding the transfer under § 548 [2], in an action against the transferee, it could not serve as a basis for denial of the debtor's discharge under § 727 since the actual transfer occurred more than one year prior to bankruptcy. We affirm the bankruptcy court.[3]

## FACTS AND PROCEEDINGS·BELOW

On June 10, 1989, the debtor, T. Steven Roosevelt (Steven) and his wife Judy Ann Roosevelt (Judy) executed a post-nuptial "marital settlement agreement." At the time, Steven was a defendant and counter-complainant in a state court lawsuit instituted by appellant Finalco, Inc. (Although Finalco also named Judy as a defendant in the litigation, she was subsequently dismissed.)

The marital agreement transmuted the couple's community and separate interests in their various properties and liabilities into separate property and liabilities of each. Among the transmutations, Judy received Steven's joint interest in the family residence, which at that time had a total unencumbered value of $233,000. The marital agreement was executed but not recorded.

Subsequently, on December 21, 1989, Steven and Judy cosigned two deeds of trust on the residence. Steven and Judy recorded a homestead for the residence on March 16, 1990. On April 12, 1990, a quitclaim deed executed by Steven in Judy's favor was recorded.

Steven filed a chapter 7 petition on November 9, 1990. Alleging an intentionally fraudulent transfer of the residence, Finalco commenced an adversary proceeding object-

ing to Steven's discharge pursuant to § 727(a). In April, 1992, the Chapter 7 trustee commenced an adversary proceeding, *inter alia*, to avoid transfer of the residence. The bankruptcy court consolidated the issues and tried them on April 19, June 8, and July 9, 1993.

After trial, the court found that although Judy was a good faith transferee, Steven executed the marital agreement with an actual intent to hinder, delay and defraud his creditors. The court concluded that the marital agreement was a complete transfer of all of Steven's interest in the residence to Judy, but because the transfer took place more than one year prior to filing the petition, the court overruled Finalco's objection and granted Steven his discharge. Finalco appeals.

## ISSUE PRESENTED

Finalco contends that the court erred by determining that the transfer of the residence occurred when the marital agreement was executed rather than at the time the quitclaim deed was recorded; in the alternative, Finalco contends that each event constituted a separate transfer.

## STANDARD OF REVIEW

■ A mixed question of law and fact occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982); *Moss v. Commission*, 831 F.2d 833, 838 n. 9 (9th Cir.1987). Since the facts before us are undisputed, resolution of the issue will be determined as a matter of law, subject to *de novo* review.

## DISCUSSION

*For the purpose of § 727, the debtor's fraudulent transfer occurred more than one year prior to the bankruptcy.*

11 U.S.C. § 727 in pertinent part states:

---

**2.** Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

**3.** The court order avoiding the transfer is the subject of another appeal: BAP No. CC–93–2217.

(a) The court shall grant the debtor a discharge unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ...

(A) property of the debtor, *within one year before the date of the filing of the petition;*

. . . .

11 U.S.C. § 727 (emphasis supplied).

The bankruptcy court noted that the date of perfection of an interest transferred is material as to avoidance of fraudulent transfers under § 548.[4] However, unlike § 548 (or for that matter, § 547(e)(2) which governs the timing of preferential transfers), no provision for the time of transfer appears in § 727, and § 548 expressly limits its timing provision "[f]or the purposes of this section" (as does § 547). The court concluded that the marital agreement was an effective transfer of all rights in the transferred property as between Steven and Judy. Because § 727 does not speak to transfers which may be subject to avoidance by virtue of a lack of timely recordation, the transfer of the residence effectively occurred when it actually happened, on June 10, 1989, more than one year prior to the bankruptcy.[5]

Based on the foregoing ruling, the issue is whether, for the purposes of § 727, Steven transferred his interest in the residence upon execution of the marital agreement on June 10, 1989, more than one year prior to the bankruptcy, or rather when the quitclaim deed was recorded on April 12, 1990.[6]

Finalco bases its argument on Cal.Civ. Code § 5110.730 (repealed 1994) (now Family Code § 852), which states: "a [marital] transmutation of real property is not effec-

tive as to third parties without notice thereof unless recorded." Cal.Fam.Code § 852(b) (West Supp.1994). Based on this statute, Finalco contends that the residence did not transfer until April 12, 1990, the date the quitclaim deed was recorded and Judy's sole interest in the property became effective as to third parties. Finalco cites in support *In re Rubin,* 12 B.R. 436 (Bankr:S.D.N.Y.1981). This case is questionable authority. The issue was not raised, and as the *Rubin* court stated, had "not been pursued by the debtor." *Id.* at 439 n. 2. Nevertheless, the court gratuitously discussed the issue referring to a split of authority thereon and concluded that the transfer should be deemed to occur when it is fully effective against all interests. *Id. Rubin's* footnote cites 4 *Collier on Bankruptcy* ¶ 727.02[2], which attempts to rationalize and equate recordation with a present attempt to effect a transfer and adverts to the "split of authority," some of it longstanding—*see Matter of Plank,* 289 F. 900 (D.C.Mont.1923); *In re McKane,* 158 F. 647 (D.C.N.Y.1907); also cited are *In re Kock,* 20 B.R. 453 (Bankr.D.Neb.1982) (holding that transfer under § 727 focuses on time of original act); *compare In re MacQuown,* 717 F.2d 859 (3d Cir.1983) (construing former Act § 14(c)(4) as looking to date of recordation); *accord, In re Roy,* 42 B.R. 102 (Bankr.S.D.Fla.1984); *Rubin,* 12 B.R. 436.

Section 727, as distinguished from avoiding sections such as § 548, contains no provision or basis for considering an effective date for any of the acts enumerated other than the actual time such act or transfer took place. As to "transfer," the act here in question, its general definition is found in § 101(54):

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting

---

**4.** *"For the purposes of this section,* a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee...."
11 U.S.C. § 548(d)(1) (emphasis supplied).

**5.** The court found that when Steven transferred the residence to Judy, he possessed the requisite intent to satisfy denial of his discharge. The

court stated in passing during the trial that, had the transfer occurred within the year prior to the date of filing, Steven's discharge would be denied.

**6.** Finalco raises an additional argument that the marital agreement was not, in fact, a transfer, merely a contract to transfer. This contention has no merit; as discussed *infra,* the agreement is a transfer of rights effective between the parties.

with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C. § 101(54).

The legislative history articulates the definition's all-encompassing character. "The definition of transfer is as broad as possible." H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271. Although the definition of transfer is broad, it does not include any action taken by the transferee subsequent to the transfer such as recordation. In this context, recordation is not an independent event, but is ancillary to and dependent on an existing transfer. To put it otherwise, a transfer has a life of its own whether or not recordation occurs. If there were no transfer, there would be no event to record.

To determine whether a transfer has occurred, we look at state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Pursuant to California law, "married persons may by agreement or transfer, with or without consideration, ... [t]ransmute separate property of one spouse to separate property of the other spouse." Cal.Civ.Code § 5110.710 (repealed 1994) (now Family Code § 850).[7] California defines "conveyance" as "every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or incumbered, or by which the title to any real property may be affected,

except wills." Cal.Civ.Code § 1215 (West 1982). Quite clearly, this broad definition includes the transmutation of property permitted by § 852.

It would be an error of law to consider a transmutation of property to be less than a transfer of the transmutor's entire interest, or as Finalco insists, only a contract to convey.[8] To be valid, transmutation requires only that it be "made in writing by an express declaration." Cal.Fam.Code § 852(a) (formerly Cal.Civ.Code § 5110.730(a)).[9] The settlement agreement on its face purports to transmute the property, and the trial court's factual finding that it did so cannot be held clearly erroneous, nor can its conclusion that under California law, the agreement constituted a legal transfer. *In re Marriage of Trantafello,* 94 Cal.App.3d 533, 156 Cal.Rptr. 556 (1979) (agreement between husband and wife that community property may become separate property of either of them is effective to accomplish a change in status of the property); *Somps v. Somps,* 250 Cal.App.2d 328, 58 Cal.Rptr. 304 (1967) (transmutation from community property to separate property occurs when spouses agree to change the character of the property); *Mears v. Mears,* 180 Cal.App.2d 484, 4 Cal.Rptr. 618 (1960) (persuasive evidence of an understanding between husband and wife to change the status of their property will rebut the presumption arising from the form in which the property is held).

7. "Subject to Sections 851 to 853, inclusive, married persons may by agreement or transfer, with or without consideration, do any of the following:
   (a) Transmute community property to separate property of either spouse.
   (b) Transmute separate property of either spouse to community property.
   (c) Transmute separate property of one spouse to separate property of the other spouse." Cal.Fam.Code § 850 (West 1994).

8. The dissent suggests that Steven's failure to record the transfer left him a property interest that could be conveyed to third parties. Steven would have the ability, but not the right, to make such a transfer, and nothing in the record suggests that this was done. Alternatively, the dissent suggests that until recordation of the transfer, Steven retained a vendor's lien. The cases cited do not support this analysis, and in any event a vendor's lien is satisfied upon payment of

the consideration. The record reflects that Judy performed her obligations, and therefore, there was nothing to support a vendor's lien. As to the dissent's suggestion that Steven's delay in recording the transfer constituted a concealment of assets, the issue was never raised below nor before us on appeal. It would be inappropriate for us to raise and decide the issue *sua sponte,* particularly as it is a question of fact. The record is clear that the trial court did not find the transfers indicated a continuing concealment of assets.

9. "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." Cal.Fam.Code § 852(a) (West Supp.1994).

Nevertheless, Finalco argues that the quitclaim deed constituted an independent or further transfer of some residual interest of the debtor in the property. As noted, until the quitclaim deed was recorded, the marital transmutation was not effective against creditors without notice, and therefore the residence was potentially subject to the reach of Steven's creditors. It is arguable that until Judy was protected by recordation of the quitclaim deed Steven might benefit by having left over for himself assets which his creditors might ignore in preference to an attack on Judy's as yet unprotected interest in the residence. It does not follow, however, that Judy's exposure to the debtor's creditors constituted a property interest of the debtor, and in any event, arguments as to hypothetical benefits to be received by the debtor are based on speculation.

Finalco points to the primary events relating to the residence as: marital transmutation, followed by two encumbrances, followed by a declaration of homestead, and finally the quitclaim deed. Finalco then points out how these events are interspersed with various stages of the Finalco litigation. This presentation attempts to demonstrate Steven's intent to defraud creditors through a continuing concealment. The narration is based on the premise that Steven retained an interest in the property after the marital transfer. The court was unpersuaded, finding that after the marital agreement was executed, Steven had no interest in the residence. We review the court's factual findings for clear error, and these subsequent acts do not contradict an ultimate finding that Steven had divested his interest in full.

Sections 727 and 548 take aim at different circumstances and operate for different purposes. Section 727 denies the undeserving debtor a discharge based on those acts that the Bankruptcy Code considers antithetical to its purpose for providing a fresh start to the deserving but improvident debtor.

On the other hand, § 548 serves to protect and conserve the debtor's estate for his creditors. Although an actual fraudulent transfer, which can also bar discharge, is included in § 548, the section also covers constructive, or innocent, fraud. To this end, the point of concern is creditors, and thus the timing of recordation or perfection, which diminishes the estate, is given importance.

Since § 727 concerns itself fundamentally with the debtor's behavior, and is not directed to avoidance of transfers, the issue of recordation is not germane. The acts listed in § 727 are those which give effect to a debtor's intent to defraud, hinder, or delay creditors by transfer, removal, destruction, mutilation, or concealment. All of these, except for transfer, do not involve a voidable act. There is no compelling reason to treat an act of transfer as having a different temporal quality than an act of removal, destruction, mutilation or concealment. The happenstance of one of these acts being subject to avoidance under another section of the Code in an action against a third party transferee should not be a basis for enlarging or extending the time set in § 727 in an action against the debtor.

## CONCLUSION

The legal basis for the court's conclusion that perfection of a transfer did not constitute a further transfer of the property is correct. Recordation by a transferee is not a transfer by the debtor. When, as here, a transferee is found to be a good faith transferee, it is evident that recordation *per se* demonstrates no intent to hinder creditors. The court did not find that Steven's delay in recording the quitclaim deed constituted a continuing concealment, and, on the facts presented, this was not clear error. The trial court order is AFFIRMED.

BRANDT, Bankruptcy Judge, respectfully dissenting:

The quitclaim deed was more than mere perfection of an earlier completed transfer of Steven Roosevelt's interest in the house to Judy via the Marital Agreement's transmutation. Although the bankruptcy court found as fact that the Agreement accomplished a complete transfer of Steven's interest in the house, ascription of the consequence of the Roosevelts' actions is a matter of law. I would hold that Steven retained a lien or interest in the house until the quitclaim was recorded within one year of his petition, and

reverse and remand for denial of his discharge.

Unlike removal, destruction, mutilation, or concealment, the other predicates for denial of discharge under § 727(a)(2) of the Bankruptcy Code [1], the Roosevelts' transmutation of their marital property could be, and was, accomplished invisibly. Until the quitclaim was recorded, there was no indication to the outside world of the transfer. Months after the entering into the Marital Agreement, and within the look-back period, Steven (jointly with Judy) acknowledged and recorded a Homestead Declaration, claiming a homestead, "... mak[ing] ourselves declared homestead *owners* ..." (emphasis added), and stating he had a joint tenancy interest in the residence. Steven continued to live in the house until after his bankruptcy filing. Precisely because there was no outward sign of the transmutation which an interested creditor might discern, we should not consider the house completely transferred for discharge purposes until the recording, unless the authorities allow no alternative.

"Property" is not defined in the Code, but § 541(a) includes within the bankruptcy estate "... all legal or equitable interests of the debtor in property as of the commencement of the case." There is no justification for construing "property" in § 727 any more narrowly: if within the year prior to filing a debtor transfers something which would otherwise be property of the estate, with the requisite intent, the discharge is to be denied. Intent is not here at issue: Steven was attempting to hinder, delay or defraud his creditors. The determinative question is whether he transferred property within the look-back period.

So long as Steven had an interest of record, he had the power effectively to convey that interest to a bona fide purchaser.[2] *In re Weisman (Robertson v. Peters)*, 5 F.3d 417, 420 (9th Cir.1993). Likewise, any creditor who obtained a judgment against him and properly recorded an abstract would have a lien on the house.[3] That Steven might thereby be liable to Judy, or that the Marital Agreement transmuted the status of their property as between them, does not alter those facts, or the legal conclusion they compel: he retained an interest in the real property. I have held in a fraudulent transfer case governed by Washington law that the debtors' conveyance of bare legal title to a self-settled trust of which they were the sole beneficiaries was a transfer which could be fraudulent under § 548, although the conveyed property remained reachable by their creditors. *In re Wallaert*, 149 B.R. 665 (Bankr.W.D.Wash.1992). I would apply the same principle, that title is an interest in real property, here.

Alternatively, Steven had a lien. Even if the Marital Agreement was a conveyance, it was in part a real estate contract, with the parties promising and obligated to reciprocal performances.[4] Steven's retained legal title was a lien, *Avery v. Clark*, 87 Cal. 619, 625, 25 P. 919, 22 Am.St.Rep. 272 (1891); *Maltby v. Conklin*, 50 Cal.App. 201, 195 P. 280, 282 (1920), or he had a vendor's lien. California Civil Code § 3046 (West 1994) provides:

One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid

---

1. 11 U.S.C.: unless otherwise indicated, all references to "section" or "§" are to the Bankruptcy Code.

2. Cal.Civ.Code § 1214 (West 1994) provides:
   Every conveyance of real property ... is void as against any subsequent purchaser or mortgagee ... in good faith and for a valuable consideration, whose conveyance is first duly recorded, and against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record [sic] of notice of action.

3. Cal.Code Civ.Proc. § 697.310 before the declaration of homestead; § 704.950 after (lien attaches to excess over pre-declaration liens and encumbrances and homestead exemption). *See In re Chabot*, 992 F.2d 891 (9th Cir.1993).

4. Besides agreeing in para. 12 of the Marital Agreement to execute whatever "deeds, releases, assignments or other·instruments, and such further assurances and instruments as may be reasonabl[y] required or requested ...," to accomplish the transfers of real and various personal property (including interests in limited and general partnerships and a professional corporation), each party undertook to pay certain of the joint liabilities.

and unsecured otherwise than by the personal obligation of the buyer.

The statute, enacted in 1872, codifies California authorities going back to early statehood, which based the lien in equity. *Salmon v. Hoffman*, 2 Cal. 138, 143 (1852) and *Walker v. Sedgwick*, 8 Cal. 398, 403 (1857).

California authority supports the Marital Agreement giving rise to a vendor's lien. In *Ira v. Ira*, 104 Cal.App.2d 41, 230 P.2d 867 (1951), a case in which the parties' intent to effect a present conveyance was much clearer from the agreement than in the case before us, and the agreement was recorded, the court unequivocally held the plaintiff wife had a vendor's lien.[5]

California law recognizes waiver of a vendor's lien, provided it is clearly manifested. *McGreevy v. Constitution Life Ins. Co.*, 238 Cal.App.2d 364, 369, 47 Cal.Rptr. 711 (1965). There is room for argument that Steven waived his vendor's lien, in that para. 10 of the Agreement provides:

> ... each party waives and relinquishes, to the fullest extent lawfully possible, all right, title, claim, lien, or interest, whether actual, inchoate, vested or contingent, in law or equity, under the laws of any state or federal law, in each other's separate property, separate property income and separate property estate *by reason of the marriage, ....* (emphasis added)

It matters not whether the underlined phrase modifies "right, title, claim, lien or interest," or only the clause in which it appears. Steven's interests in the house (title, lien of retained title, or a vendor's lien) did not arise by reason of the marriage, but from his status as an owner of record and from the Agreement.

5. Although a Ninth Circuit case, *Transducer Patents Co. v. Renegotiation Board*, 492 F.2d 247 (1974), in considering the respective interest of the parties in a patent, states, at 250, that the vendor's lien does not arise unless there is a sum certain due, citing *Gard v. Gard*, 108 Cal. 19, 40 P. 1059 (1895), neither the statute nor the California cases require that. In *Gard*, the court relied on Pomeroy's *Equity Jurisprudence*, not the statute, and the court's precise holding was that the plaintiff's later agreement extinguished his vendor's lien, if he had one. Further, the California Supreme Court quoted the trial court's

Even if Steven intended a waiver of his vendor's lien, he had record title until the quitclaim was recorded, within a year of his petition. In delivering his deed[6], Steven transferred his remaining interest in the house to Judy, relinquishing his lien (if any), and effectuating his fraudulent intent. Since § 727(a)(2)(A) does not require any particular quantum of property to be transferred, the bankruptcy court should be reversed: Steven, with his law and medical degrees and practices, attempted to defraud his creditors. He was not a poor but honest debtor entitled to a discharge.

conclusion that the purchaser's obligation was contingent and indefinite. Here, the Marital Agreement requires specific and uncontingent performance from Judy.

6. Steven executed the deed on 22 March 1992, within a year before his petition. We need not here be concerned about the possibility of a third party's action or inaction (in failing to record a deed delivered before the look-back period until within it) affecting his discharge.