In the Matter of Glenn S. BONE, a/k/a
G. S. Bone, a/k/a Glenn Stark
Bone, Debtor.

Toombs D. LEWIS, Plaintiff,

v.

Glenn S. BONE, a/k/a G. S. Bone, a/k/a
Glenn Stark Bone, Defendant.

Bankruptcy No. 79–00094.
Adv. Proceeding No. 80–0010.

United States Bankruptcy Court,
M. D. Georgia,
Athens Division.

Sept. 22, 1980.

**550**

Glenn S. Bone, pro se.

Thomas A. Nash, Jr., Fortson, Bentley & Griffin, Athens, Ga., for defendant.

John E. Kardos, Athens, Ga., for plaintiff.

## MEMORANDUM DECISION ON COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT AND DISCHARGE OF THE DEBTOR

### STATEMENT OF THE CASE

HENRY D. EVANS, Bankruptcy Judge.

Glenn S. Bone, a/k/a G. S. Bone, a/k/a Glenn Stark Bone, defendant, filed his voluntary petition in bankruptcy on October 25, 1979. On January 17, 1980, within the time set by order of the Court, Toombs D. Lewis, plaintiff, filed his complaint to determine dischargeability of a debt and objecting to the discharge of the debtor. The defendant answered generally denying the pertinent parts of the complaint. The matter came on regularly to be heard on March 28, 1980, and after consideration of the evidence before it, the Court makes the following:

### FINDINGS OF FACT

On July 6, 1978, the defendant transferred an improved piece of real estate on Old Lexington Road in Clarke County, Georgia to a Mr. and Mrs. Long. The Longs, in consideration for said transfer, delivered a Deed to Secure Debt to the defendant's wife and executed a note in the amount of $15,000.00 payable solely to the defendant's wife. At the time of the transfer, the defendant and his wife were aware that a judgment in favor of the plaintiff and against the defendant had been rendered by the Superior Court of Clarke County in the amount of $25,000.51. On January 19, 1979 the note from the Longs was discounted and Mrs. Bone received $14,000.00 in payment thereon.

Around the time the defendant was first sued by the plaintiff in Superior Court, prior to March 29, 1978, a joint account of the defendant and his wife, and all personal accounts of the defendant were closed, and a checking account in the name of the defendant's wife individually was opened. The money from the discounted note was placed in the individual account of the defendant's wife and used to support the defendant and his family.

In January of 1979 the defendant began working for Wellington–Puritan Mills, receiving a salary in excess of $19,000.00 per year. The paychecks of the defendant were also deposited to the personal account of his wife. At that time she was unemployed and had no source of income. The checks continued to be deposited to Mrs. Bone's account until the filing of the defendant's voluntary petition in bankruptcy. Shortly before the bankruptcy petition was filed, the plaintiff instituted garnishment proceedings on the salary of the defendant.

### CONCLUSIONS OF LAW

Were this case considering only the transfer of the real property in question there would be nothing for the Court to do other than grant the discharge of the defendant. See *In re Hood*, Bankr.L.Rptr. (CCH) ¶ 66,596; *In re Huntley*, 14 F.Supp. 784 (D.C.Mass.1936). The portion of the com-

plaint grounded on willful and malicious injury to property and Section 523 of the Bankruptcy Code, was completely abandoned and no evidence is before the Court on that matter. Since the subject transfer was without the statutory period contained in Section 727(a)(2) of the Code, even if the transfer was an attempt to defraud creditors, the discharge would stand. *In re Hood*, supra. The fact that other actions were taken by the defendant, clearly with the intent to hinder his creditors, is the distinguishing factor that brings this case within the purview of the above stated section. The Code stated in pertinent part:

"§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless–

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed or concealed–

(A) property of the debtor within one year before the date of the filing of the petition; ..."

There is no doubt that the salary of the defendant prior to bankruptcy is property of the debtor. There is no doubt that the debtor allowed his salary to be transferred to the account of his wife during the year preceding the filing of the petition. There is equally no doubt that the transfer hindered any creditor trying to reach the assets of the defendant. The sole question before the Court is whether intent to hinder has been sufficiently shown by the plaintiff to warrant the denial of the defendant's discharge.

It is well established that the intent to hinder must be actual intent. 1A *Collier on Bankruptcy*, ¶ 14.47 (14th ed.). It is equally well established that the intent may be inferred from the actions of the debtor. See 1A *Collier on Bankruptcy*, ¶ 14.47, page 1412 (14th ed.). In the case sub judice the acts of the defendant, in total, preclude any conclusion other than one of actual intent to defraud. The defendant's residence was sold and the proceeds paid solely to his wife. The defendant closed all personal and joint bank accounts. The defendant lived with his wife, getting the benefit of the proceeds of the above sale and the benefit of his paychecks which were always promptly deposited to his wife's individual account. Shortly after garnishment of his wages took place, the defendant filed bankruptcy. There is no question that from the beginning all these things were done with the intent to hinder the very creditor who has brought the complaint considered.