In re Richard A. RUBIN, Debtor.

BALTIC LINEN CO., INC., Plaintiff,

v.

Richard A. RUBIN, Defendant.

Bankruptcy No. 80–30133.
Adv. No. 80–7024.

United States Bankruptcy Court,
S. D. New York.

July 6, 1981.

Katz, Robinson, Brog & Seymour, P.C., New York City, for plaintiff by Robert M. Milner, New York City, of counsel.

Feinman & Greher, Newburgh, N.Y., for debtor-defendant by Warren Greher, Newburgh, N.Y., of counsel.

## DECISION ON COMPLAINT OBJECTING TO DISCHARGE UNDER § 727(a)(2)

JEREMIAH E. BERK, Bankruptcy Judge.

This adversary proceeding, commenced by Baltic Linen Co., Inc., seeks to bar the discharge of Richard Rubin, the debtor-defendant herein, pursuant to § 727(a)(2) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* (the Bankruptcy Code). Plaintiff alleges that the debtor, with intent to hinder, delay, or defraud, transferred his interest, as tenant by the entirety, in his marital residence to his wife within one year of the date of filing of his individual Chapter 7 petition. Debtor admits the transfer and that it occurred within one year of the date of filing of the petition, but denies that it was done with intent to hinder, delay, or defraud creditors, claiming fair consideration to support the transfer.

Pursuant to pre-trial order, a stipulation was filed setting forth the agreed facts and limiting the trial to the sole issue of whether or not this transfer was made "with intent to hinder, delay or defraud a creditor" within the meaning of § 727(a)(2)(A). Requests for admissions of facts and the reply thereto were filed together with pre-trial memoranda of law of each party. The matter proceeded to trial on February 20, 1981. The only testimony adduced during trial was that of the debtor and his wife who were called to testify on plaintiff's case. The debtor offered no testimony in his own behalf. Upon the pleadings, admissions of facts, pre-trial stipulation, docu-

ments in evidence, and the testimony of the debtor and his wife at trial, and after considering the memoranda of law of each party, the following decision is rendered.

## STATEMENT OF CASE AND FINDINGS OF FACT:

On April 8, 1980 the debtor, Richard Rubin, filed a voluntary petition for liquidation under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. The schedules accompanying his petition show an unsecured debt to plaintiff, Baltic Linen Co., Inc., in the sum of $34,712.24. This debt arose as a result of the individual personal guarantee by the debtor of the corporate obligation of S.I.J. Laundry & Linen Supply Co., Inc. (hereinafter S.I.J.), while the debtor was president of that entity.[1]

In May, 1969, the debtor and his wife, Barbara Rubin, purchased, as tenants by the entirety, a one acre parcel of land in Monticello, New York. During 1972 a house was constructed thereon which has been occupied by the debtor and his wife as their principal residence since that time. By bargain and sale deed dated March 11, 1979 and signed by each, the debtor transferred his interest in this residence to his wife. The deed was recorded by the Sullivan County Clerk on June 20, 1979, the date when the property was "transferred" within the meaning of Bankruptcy Code § 727(a)(2).[2]

The value of this residence on June 20, 1979, exclusive of mortgage debt, was approximately $64,000.[3] At the time the deed was executed, the only consideration passing between the debtor and his wife was the sum of $500 deposited to their joint checking account by Mrs. Rubin which was later paid by the debtor as a deposit on his future tuition at podiatry school. Subsequently, between March 12, 1979 and June 20, 1979, the approximate sum of $1,500 was paid to the debtor by his wife on account of his anticipated educational expense.

At the time of the transfer on June 20, 1979, the debtor was insolvent, with liabilities in excess of $250,000 and assets, exclusive of his equity in the marital residence, of less than $10,000. In September, 1979, plaintiff instituted an action in New York State Supreme Court against Mr. Rubin on his personal guarantee of the S.I.J. obligation and obtained a judgment in the sum of $17,816.35 which was docketed in the Sullivan County Clerk's Office on January 7, 1980. Thereafter, in February, 1980, plain-

---

1. From 1970 through July, 1979, the debtor was president of S.I.J. On July 31, 1979, S.I.J. filed a petition under Chapter XI of the former Bankruptcy Act and a plan of arrangement in that case was confirmed in February, 1980. It appears that the debtor had personally guaranteed corporate obligations in excess of $220,000 by the time he resigned as president. The debtor is now pursuing a career as a podiatrist and is enrolled as a full-time student at a school of podiatry.

2. Although the issue has not been pursued by the debtor, there appears to be a split of authority as to the time of the "transfer" for purposes of barring a discharge under § 727(a)(2) where, as in this case, a deed is executed outside the one-year statutory period, but is recorded within the period. See 4 Collier on Bankruptcy, ¶ 727.02[2] (15th ed. 1980). This Court adopts the position that the transfer should not be considered complete until it is so far perfected that no bona fide purchaser could acquire rights in the property superior to that of the intended transferee. Under New York Real Property Law § 291 (McKinney 1968), a conveyance of real property is perfected upon recordation and prior thereto is void as against

subsequent bona fide purchasers for value. Therefore, the transfer became complete on June 20, 1979, the date the deed was recorded, and within one year before the date of the filing of the petition herein. It should also be noted that this interpretation is consistent with § 548(d)(1) of the Bankruptcy Code which similarly fixes the time of the transfer in proceedings to avoid fraudulent transfers.

3. At trial, debtor's counsel alleged that the previously stipulated $64,000 value was incorrect and that is should be reduced by the balance remaining on the mortgage of approximately $28,000. The pre-trial stipulation of the parties, however, fixes the value of the residence as of the date of transfer on June 20, 1979 at $64,000 "exclusive of outstanding mortgage." Even if the pre-trial stipulation were to be amended to deduct the mortgage balance from the $64,000 agreed value, a procedure to which plaintiff objected at trial, the value of the residence at the time of the transfer would approximate $36,000 and would not alter the result reached herein.

tiff instituted a State Court action under the New York Debtor and Creditor Law against the debtor and his wife seeking to set aside the transfer of June 20, 1979 as a fraudulent conveyance. That action is still pending, but stayed pursuant to § 362(a) of the Bankruptcy Code by virtue of the filing of the petition herein.

The schedules accompanying the debtor's petition show no secured debt, and list unsecured indebtedness in excess of $249,000. His assets, valued at $1,505, are all claimed as exempt. The statement of affairs makes no mention of the transfer of his interest in the marital residence to his wife during the year preceding the filing of the petition.

The testimony of the debtor and his wife, both called as witnesses on plaintiff's case, did not shed much light on the circumstances surrounding the execution of the deed or the reason for the transfer. The answers of each to plaintiff's inquiry on these matters were vague and, at times, appeared to be evasive. Although Mr. Rubin consulted an attorney concerning the transfer before executing the deed, a neighbor subsequently prepared the deed and a friend acted as notary thereon. Mrs. Rubin had difficulty remembering where and under what circumstances she executed the deed. Both testified that the transfer occurred as a result of a "mutual agreement" apparently motivated by the anticipated career change of Mr. Rubin which, it is alleged, would necessitate the use of certain personal funds of Mrs. Rubin for her husband's education and support of the family. Mrs. Rubin testified that at no time did she specifically request that her husband transfer his interest in the marital residence to her and stated that even if the transfer had not occurred, she would have nevertheless contributed to the cost of her husband's

anticipated podiatry education and the support of the family.

The debtor testified that at all times relevant to this proceeding, he had knowledge of the amount of his liabilities arising from his personal guarantee of various obligations of S.I.J. However, he did not consider them "personal" obligations, but rather corporate debts only. He further testified that he did not consider the effect on his creditors when contemplating and executing the transfer of his interest in the residence, notwithstanding that he had discussed the transfer with an attorney prior thereto.

Apparently content to rely upon plaintiff's inability to meet its burden under Bankruptcy Rule 407, 411 U.S. 1052,[4] 93 S.Ct. 3135, the debtor offered no testimony whatsoever on his own behalf and rested immediately upon conclusion of plaintiff's case.

From the testimony and evidence adduced at trial, I find that at the time of the transfer on June 20, 1979, the value of Mr. Rubin's interest in the marital residence was approximately $32,000 for which he received no more than $2,000 from his wife.

## DISCUSSION

 Bankruptcy Code § 727, successor to former Bankruptcy Act § 14, is the heart of the fresh start provision of bankruptcy law and embodies the well-accepted principle that the Bankruptcy Code is intended to permit the honest debtor to receive a new start in life free from debt.[5] The right to a discharge in bankruptcy is statutory and does not lie within the discretion of the court. Section 727 must be construed liberally in favor of the debtor and strictly against the objector.[6] Bankruptcy Rule 407, which is not inconsistent with the new Bankruptcy Code,[7] places upon plaintiff the

---

**4.** "Burden of Proof Objecting to Discharge— At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection."

**5.** *In re Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976).

**6.** *In re Dee*, 6 B.R. 784, 786 (Bankr.Ct.W.D.Pa. 1980).

**7.** Section 405(d) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2685, makes applicable the Rules of Bankruptcy Procedure in effect on September 30, 1979, to the extent not inconsistent with the Bankruptcy Reform Act of 1978.

burden of proving all of the facts essential to his objection to discharge.

Plaintiff seeks to bar the debtor's discharge alleging violation of § 727(a)(2)(A) which provides:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; ...

To sustain an objection under this provision, the proof must show (1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition, (2) with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code, (3) that the act was that of the debtor or his duly authorized agent, and (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done. 4 *Collier on Bankruptcy*, ¶ 727.-02[1] (15th ed. 1980). Having found that the debtor transferred his interest as a tenant by the entirety to his wife by a deed recorded on June 20, 1979, three of the four required elements of plaintiff's claim are satisfied, and leaves for consideration the only truly disputed issue in this proceeding, whether the transfer was made with intent to hinder, delay or defraud a creditor.

In order to deny a discharge, "the court must find that the transfer ... of property in question was effected with actual intent to hinder, delay, or defraud creditors." *Halpern v. Schwartz*, 426 F.2d 102, 104 (2d Cir. 1970). "Constructive fraudulent intent ... cannot be the basis for denial of discharge." *In re Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976). While "actual intent" to hinder, delay, or defraud is not always easy to define or prove, an inference of actual intent may be drawn from convincing evidence of extrinsic fraud. Further, where valuable property has been gratuitously transferred, or transferred for inadequate consideration, a presumption arises that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge.[8]

Plaintiff contends that actual intent to defraud creditors must be found since the transfer was made without "fair consideration" and is thus presumptively fraudulent. The debtor alleges that the transfer was made without actual intent to hinder, delay, or defraud his creditors and was made for fair consideration, which was comprised not only of the $2,000 advanced by his wife prior to June 20, 1979, but, in addition, the promise of his wife to provide future support for the family and payment of his podiatry school expenses.

Fair consideration which may protect a transfer of property from attack as a fraudulent conveyance under New York law is defined in § 272 of the New York Debtor and Creditor Law (McKinney 1945):

Fair consideration is given for property, or obligation,

(a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

---

**8.** See *Rothschild v. Lincoln Rochester Trust Co.*, 212 F.2d 584 (2d Cir. 1954); *In re Derrick*, 288 F.Supp. 964 (E.D.Ark.1964); *In re Bateman*, 3 Bankr.L.Rep. (CCH) ¶ 67,963 (8th Cir. 1981); *In re Riddle*, 8 B.R. 797 (Bankr.Ct.S.D. Fla.1980); 4 *Collier on Bankruptcy*, ¶ 727.02[3], n. 7 (15th ed. 1980). See also, *In re Woods*, 71 F.2d 270 (2d Cir. 1934), cert. denied 293 U.S. 601, 55 S.Ct. 117, 79 L.Ed. 693, holding that the transfer of a valuable asset for inadequate consideration constituted *prima facie* grounds to believe that the transfer was intended to hinder, delay, or defraud creditors; and *In re Beckman*, 6 F.Supp. 957 (W.D.N.Y.1934), holding that a voluntary transfer of property with no benefit or return consideration to the bankrupt's estate is necessarily a transfer with intent to hinder, delay and defraud creditors.

(b) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

■ A promise of future support is not fair consideration within the meaning of that statute. *Orbach v. Poppa*, 482 F.Supp. 117, 120 (S.D.N.Y.1979). Indeed, the testimony of Mrs. Rubin indicates that the transfer by her husband was gratuitous since it was not conditioned upon a promise of future support from her.[9]

■ Although the absence of fair consideration for a transfer is not, in and of itself, proof of actual intent to defraud, this circuit has held that, "[a] conveyance while insolvent, without anything approaching a fair consideration to creditors ... is presumptively fraudulent within the discharge provisions of the Act." *Rothschild v. Lincoln Rochester Trust Co.*, 212 F.2d 584, 585 (2d Cir. 1954). The transfer by the debtor of his interest in the residence having been made while insolvent and without fair consideration raises such a presumption and, while "[s]uch a presumption is no more than a rule of procedure in a particular jurisdiction," [10] it imposes on the volunteer transferor the duty of going forward with proof that the transfer was made without actual intent.[11]

■ The debtor has failed to come forward with evidence to rebut the presumption that the transfer was made with intent to hinder, delay, or defraud his creditors. The "mutual agreement" offered by the debtor to explain the transfer does not seem credible under the circumstances.

■ In addition to the absence of fair consideration to support the transfer, other "badges of fraud" present here include, the insolvency of the debtor at the time of the transfer, the transfer to a family member, and the continued use and enjoyment of the residence by the debtor subsequent to the transfer.[12] An inference of actual intent to defraud creditors may be drawn from the extrinsic evidence of the debtor's actions. This inference is compelling and inescapable and precludes any conclusion other than one of actual intent to defraud. See *In re Bone*, 7 B.R. 549, 551 (Bankr.Ct.M.D.Ga. 1980). "The law forbids all efforts to put property beyond the reach of creditors, no matter what its value; so long as courts are tolerant of such conduct, men will engage in it and the purposes of the bankruptcy act will be balked." *In re Feynman*, 77 F.2d 320, 322 (2d Cir. 1935).

### CONCLUSIONS OF LAW:

1. Plaintiff has satisfied its burden of proving all of the facts essential to its objection to discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

2. The discharge of this debtor is denied.

As required by Bankruptcy Rule 921(a), a separate judgment will be entered in accordance with this decision.

9. On direct examination by plaintiff, Mrs. Rubin testified as follows:

Q Did you at any time tell your husband that unless he joined in a deed to the residence which you owned, you would not contribute to the expenses of your husband and the family during the period when your husband would attend podiatric school?

A No, it was something that we sat down and discussed and came to more or less a mutual agreement.

Q Who suggested it first?

A Oh, I have no idea. It was a mutual thing that we just discussed.

Q Well, would you have supported your husband had he not deeded the property to you?

A Probably, yes. (Transcript of Trial, 2/20/81 at 72–3).

10. *Feist v. Druckerman*, 70 F.2d 333, 335 (2d Cir. 1934).

11. Although such a presumption shifts the burden of going forward with the evidence, Bankruptcy Rule 407 remains applicable and imposes on the objecting party the burden of proof (i. e., the risk of non-persuasion) on all issues. See n. 4 *supra*.

12. See 37 Am.Jr.2d, Fraudulent Conveyances § 10 (1968).