In re George W. **COMPTON** and Linda S. Compton, Debtors.

Bankruptcy No. 85–2287.

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 9, 1987.

Francis E. Corbett, Pittsburgh, Pa., for debtors.

Carlota M. Böhm, Schaffler & Böhm, Pittsburgh, Pa., for trustee.

---

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is an Objection by the Trustee to a claim of exemption by the Debtors. Specifically, the Court must determine whether the transfer of a one-half (½) interest in the Debtor-husband's retirement stock and savings account to his Debtor-wife, constitutes a valid transfer which would entitle the Debtor-wife to claim an exemption therein.

The parties have submitted briefs and a Stipulation of Facts. Based upon these offerings and relevant case law, we have determined that the exemption claimed by the Debtors relating to the transferred portion of the stock and savings account must be disallowed.

### FACTS

On October 2, 1985, George Compton, Debtor, transferred a one-half (½) interest in his stock and savings funds held by his employer, ARMCO, Inc., to his wife of one (1) year, co-Debtor, Linda Compton.

On October 9, 1985, just seven (7) days thereafter, Debtors filed a voluntary Chapter 7 petition in bankruptcy, which was dated *September 25, 1985*, wherein they claimed exemptions under the Code for their residence, cash on hand, deposits, household goods, automobiles and the stock and savings account. Apparently Debtors prepared and executed the Bankruptcy Petition and Schedules, and thereafter, the husband-Debtor transferred interest in the property to himself and his wife. Finally, Debtors filed the previously completed Petition. The exemptions in dispute are those taken for the stock and savings account.

### ANALYSIS

This Court must determine whether the Debtors properly exempted the stock and savings account held by ARMCO, Inc. in accordance with applicable Bankruptcy Code provisions. While the Code grants exemptions to debtors at the expense of creditors, it also sets guidelines relating to their use. In *In re Ford*, 53 B.R. 444 (W.D.W.Va.1984), the Court noted the well-established general rule that, in the eleventh hour, a debtor may convert a part of his non-exempt property into exempt property, removing it from the reach of his creditors. *See also, In re White*, 28 B.R. 240 (Bankr.E.D.Pa.1983).

This ease of converting the status of certain property allows the debtors to make full use of the exemptions given to them under the Code, and assists in the overall policy of providing the debtor with a "fresh start". Thus, a debtor who uses non-exempt property, free and clear of encumbrances, in order to obtain an exempt homestead, merely avails himself of the plain provisions of the Code.

One rather creative example of this conversion occurred in *Forsberg v. Security State Bank of Canova*, 15 F.2d 499 (8th Cir.1926), wherein the Court held that a debtor/farmer complied with applicable bankruptcy law when he converted his cattle and the cash proceeds received from the sale of his hogs to a herd of sheep; the relevant state law permitted a debtor to exempt his sheep, but not hogs or cattle.

The Code's policy of granting exemptions attempts to set a sufficient level of protection for debtors in those states which provide very limited exemptions. 3 *Collier on Bankruptcy* § 522.08 [4] at 522–42. As stated in *White, supra*, the Code presumes that creditors know the law and assume the risk that debtors may invest their assets in exempt property.

While recognizing this rule, the courts have developed a limitation relating to the conversion of property from non-exempt to exempt status—if the evidence presented reveals an intent to hinder, delay, or defraud creditors, the transfer of nonexempt to exempt property should be rescinded. An inference of actual intent to hinder, delay or defraud may be drawn from the debtors actions. *See In re Rubin*, 12 B.R. 436 (Bankr.S.D.N.Y.1981); *In re Bone*, 7 B.R. 549 (Bankr.M.D.Ga.1980). Thus, the courts may look at both the actions taken

and their timing to determine whether an allowable transfer occurred.

This Court has previously relied upon various factors, referred to as "badges of fraud", which indicate fraudulent intent. *See Matter of Brooks*, 58 B.R. 462 (Bankr. W.D.Pa.1986). These indicia of fraud include:

1) an absence or negligible amount of consideration;

2) the value which the transfer took from the estate;

3) the time in which the transfer occurred;

4) the relationship between the debtor and the transferee; and

5) the debtor's financial condition at the time of the transfer.

*Id.* at 465–66. *See also, In re Peery*, 40 B.R. 811, 815–16 (Bankr.M.D.Tenn.1984) and *In re Rubin*, 12 B.R. 436, 442 (Bankr.S.D. N.Y.1981). Indeed, several courts, including this Court, have found a transfer for little or no consideration to a close relative is clear evidence of fraudulent intent. *See Matter of Brooks, supra; In re Butler*, 38 B.R. 884 (Bankr.D.Kan.1984); *In re Nazarian*, 18 B.R. 143 (Bankr.D.Md.1982); *Matter of Loeber*, 12 B.R. 669 (Bankr.D.N.J. 1981); *In re Rubin, supra.*

■ A transfer can be fraudulent regardless of actual intent. 1A *Collier on Bankruptcy* § 1447 at 1412–1413 (14th ed. 1978) (discussing the Bankruptcy Act of 1898, as amended). This legal proposition has been found applicable under the present Code as well. For example, in *Ford, supra*, the debtor transferred his fee simple interest in land to his wife and himself as tenants by the entireties. The debtor contended that his parents had mistakenly conveyed this land to him alone, instead of to both him and his wife. The District Court held that since he waited to correct the mistake until a county court rendered a judgment against him, the judgment provided the motivation to convert the land to an exempt status. Therefore, the Court concluded that the debtor acted with the intent to defraud, hinder, or delay his creditors.

Similarly, in *White, supra*, a judgment for $50,000.00 was entered against the debtor, who then attempted to exempt property by conveying a part interest to his wife, instead of retaining the entire interest in the property and applying the personal exemptions allotted him by the Code. In examining the property transfer, based upon the timing of the transfer, the transfer to another person, and the receipt of no value in consideration, the Bankruptcy Court concluded that the debtor did not use his personal exemptions, but rather, he conveyed an interest in his assets to a family member in order to shield his property from his creditors.

In *In re Oliver*, 44 B.R. 989 (D. Mass. 1984), the debtor, in an attempt to create a tenancy by the entireties, conveyed property to his non-debtor wife three (3) months prior to filing a voluntary petition. The Court, relying in part on *White, supra*, ruled the transfer to be fraudulent.

The aforementioned, cited cases all deal with a debtor conveying assets to non-debtors. While the case at bar involves a debtor transferring assets to his co-debtor wife, in order that she might exempt those assets, it parallels those cases cited, in that the Debtor attempted to exempt his assets by conveying them to another, instead of retaining his entire interest in them, and applying the personal exemptions permitted by the Code. Therefore, this Court must consider the timing and circumstances relating to the transfer.

The case of *Butz v. Wheeler*, 17 B.R. 85 (Bankr. S.D.Ohio 1981), not only incorporates these guidelines, but also parallels the issue and fact pattern in the case at bar. In *Butz, supra*, the husband-debtor attempted to assign an undivided one-half (½) interest in certain property to his wife, a co-debtor; said property being the husband's tax refund. The Bankruptcy Court held that since the debtor received nothing of legal value in exchange, and the debtor was insolvent on the date of the transfer, the assignment constituted a fraudulent conveyance. Both the Bankruptcy Code, in

§ 548(a)(2), and Pennsylvania law, in 39 P.S. § 354, state that in order to set aside a transfer, it must be made without fair consideration by an insolvent debtor; or, must render the debtor insolvent. The case at bar fulfills both of these criteria, as it involves an insolvent debtor, George Compton, and inadequate consideration.

Many courts have examined the value of the consideration given in an exchange or transfer in order to determine its adequacy. In *In re Gerson*, 35 B.R. 129 (B.A.P. 9th Cir.1983), the Court held that where the debtor transferred 43,700 shares of stock to his brother for $500.00, and 10,500 shares of this stock sold for $3,000.00, the transfer constituted a fraudulent conveyance. Similarly, in *In re Bates*, 32 B.R. 40 (Bankr. E.D.Cal.1983), the court held that where property worth $45,000.00 was transferred for $2,200.00, the transfer represented a fraudulent conveyance. Finally, both the Pennsylvania and federal courts have determined that fair consideration must be given in an exchange. *See First National Bank of Marietta v. Hoffines*, 429 Pa. 109, 239 A.2d 458 (1968); *United States v. Gleneagles Investment Company, Inc.*, 565 F.Supp. 556 (M.D. Pa.1983).

Factual similarity between the case now before the Court and *Marietta, supra*, warrants further analysis. In *Marietta*, the Pennsylvania Supreme Court held that two conveyances of realty, each for stated consideration of one dollar ($1.00), by the husband to himself and his wife as tenants by the entireties, were not for "consideration", notwithstanding services allegedly rendered by the wife on their farm over the years.

In the case at bar, the consideration of one dollar ($1.00), love, affection, and other valuable consideration given by Linda Compton in exchange for the stock and savings account interest, comports to the lopsided consideration given in *Gerson, Bates*, and *Marietta, supra*, as the value of the consideration given by Linda Compton fails to even closely approximate the value of the one-half share in the stock and savings account received. Furthermore, it is evident that the Debtors attempted to claim this exemption well after the "eleventh hour" had passed. Debtors were prepared to file their Bankruptcy Petition on the date of execution. It appears that the actual filing was simply postponed to provide the Debtors with an opportunity to effect the transfer. Since this case involves an insolvent debtor, receiving inadequate legal value in exchange for the transfer of the stock and savings account, and attempting to effectuate this transfer almost as a contrivance, the transfer must be rescinded as a fraudulent conveyance.

An appropriate Order will be issued.