In re Eldon E. KUHNS, a/k/a E. E. Kuhns, Debtor.

The OFFICIAL UNSECURED CREDITORS COMMITTEE FOR the BANKRUPTCY ESTATE OF Eldon E. KUHNS, Plaintiff,

v.

Eldon E. KUHNS, Jo Ann C. Kuhns and Montana Bancsystem, Inc., Defendants.

Bankruptcy No. 86–40561.
Adv. No. 487/0088.

United States Bankruptcy Court, D. Montana.

June 12, 1989.

Joel E. Guthals, Billings, Mont., for debtor.

Jerry N. Stehlik, Shulkin, Hutton & Bucknell, Seattle, Wash., for Unsecured Creditors Committee.

Thomas H. Fain, Williams, Kastner & Gibbs, Bellevue, Wash., for JoAnn Kuhns.

Carey E. Matovich, Billings, Mont., for FN Bancorp, Inc.

James M. Ragain, Robert C. Reichert, and Donald W. Quander, Billings, Mont., for Montana Bancsystem.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Plaintiff, the Official Unsecured Creditors Committee for the Bankruptcy Estate of Eldon E. Kuhns, a Chapter 11 Debtor, seeks judgment against the Debtor and his wife, for turnover of assets allegedly transferred from the Debtor to his wife. After Answer, trial on this cause was held on April 18 and 19, 1989. Deposition testimony of JoAnn Kuhns and Norman C. Dean has been submitted by agreement of parties as part of the trial record. Memorandum of authorities have now been filed by the Plaintiff and Defendant, JoAnn Kuhns.

This action involves four assets, namely, (1) a promissory note dated June 30, 1984, from First National Bancorp, Inc., an Arizona bank, payable to JoAnn Kuhns in the sum of $100,000.00 [1]; (2) a life insurance policy with a cash value of $224,000.00 issued by The Equitable Insurance Company, insuring the life of the Debtor for the sum of two million dollars; (3) deferred compensation payments due from Montana Bancsystems, Inc. (MBI), a bank holding company, payable monthly at the rate of $9,161.48 until June 30, 1996, with a total sum due of $671,541.00 plus interest [2]; (4) post-petition payments of interest, insurance and taxes by the Debtor on the Arizona residence of Debtor's wife, JoAnn Kuhns. It is the contention of the Plaintiff that items 1, 2, and 3 are assets or property of Debtor's estate, while Defendant/Debtor and his wife claim such items were gifted by the Debtor to his wife pre-petition while the Debtor was solvent. As to item 4, the Plaintiff contends all payments were made from assets of the Debtor's estate without authority or right to do so, while Debtor contends such payments were made in lieu of rent for the Debtor's use of the residence while performing business of the Debtor. The Defendants also claim that all issues were resolved in another action wherein the Debtor sued and received judgment against MBI in the United States District Court for the District of Montana, Cause No. CV 86–261–Blg–JDS, entitled *E. E. Kuhns, JoAnn Kuhns and Christine A. Kuhns Goodnow, Plaintiffs, v. Montana Bancsystems, Inc., et al.* Judgment in that cause was entered on July 8, 1988, in favor of E. E. Kuhns and his wife, Jo Ann Kuhns, for contract and tort damages, part of which judgment included a resolution of

---

2. An offset or credit of $214,424.00 was rejected by the United States District Court in Cause CV 86–261–Blg–JDS, described in this Decision. The above sum represents the amount of the judgment entered in Cause CV 86–261.

the dispute between MBI and Kuhns as to the amount due Kuhns for deferred compensation noted under item (3) above.

This adversary case was brought by the Plaintiff upon authority of this Court on behalf of the Chapter 11 Debtor estate since the Debtor-in-possession was unwilling to pursue each claim. The Committee was not a party to the Federal District Court case CV 86–261, and from the findings of fact and conclusion of law entered in that case, which is now on appeal and has thus not been finally resolved, it is clear the issues raised as to the amount of deferred compensation due Kuhns from MBI did not involve the allegations made by the Plaintiff in this case as to unlawful nature of the transfer of such assets to JoAnn Kuhns. The same is true as to the transfer of ownership in the life insurance contract. Specifically, the District Court found that the Debtor was to have the right to designate the owner and beneficiary of the policy, which was to be his wife, but the policy was never timely changed. Indeed, the Federal Court found the transfer occurred in September 1986, the same month the Bankruptcy Petition was filed. The issue before the District Court did not involve voidable transfers under the Bankruptcy Code. On the deferred compensation issue, the findings of the Federal Court state the Debtor assumed there would be a transfer of that asset to his wife in January 1983, but it was not accomplished by MBI, which formed a basis of the judgment against MBI. Again, the Federal District Court applied non-bankruptcy law and had no issue before it as to the contention of the Trustee that each transfer was a preference or voidable under bankruptcy law. In sum, issues in the case *sub judice* regarding ownership, dates of transfer or avoidability of transfer between the Debtor and his wife were simply not litigated in the *Kuhns v. MBI* action because there was no necessity to do so. The Federal Court tried the case on the doctrine of breach of the implied covenant of good faith and fair dealing and contract law, not on any issue dealing with what constitutes assets of the bankruptcy estate under § 541 of the Code

or what may be recovered as assets of the estate.

■ Issue preclusion, or res judicata, has been summarized in *Del Mar Avionics v. Quinton Instruments Co.*, 645 F.2d 832, 834 (9th Cir.1981), citing *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979):

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...' [citation omitted]. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. [citation omitted]. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."

I conclude the issues involved in the present case before this Court were not "distinctly put in issue and directly determined" by the Federal District Court in *Kuhns v. MBI*. Further, contrary to the contention of the Defendants Kuhns, the Plaintiff Committee was not a party to the prior action either directly or by privy. *Del Mar Avionics, supra,* also holds:

"Whether a nonparty controlled the earlier litigation is a question of fact for the trial court. *Ransburg Electro–Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1038 (3rd Cir.1973). Factors important to a finding of control include selection and payment of counsel, payment of litigation expenses, a written indemnification agreement, participation in settlement negotiations, and control over the decision to appeal. *TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 318 (7th Cir.1974); *Troy Company v. Products Research Company*, 339 F.2d 364, 367 (9th Cir.1964)." *Id.* at 835.

Preclusion of a non-party falls under the doctrine of collateral estoppel because of vicarious control of litigation. *Del Mar*, at 835. Here, Kuhns and the Plaintiff Committee are antagonistic to each other and not aligned on the same issues in this litigation or the previous action. Indeed, as noted above, the Debtor refused to commence this action against his wife for recovery of assets, contending all along they were not property of the estate. An element of collateral estoppel is the actual, free and fair litigation between the same parties or their privy, especially when they are or were aligned on the same side of an action. *Franklyn Stainless Corp. v. Marlow Transport Corp.*, 748 F.2d 865, 867 (4th Cir.1984). No alignment is present under the facts shown here, and therefore, the Defendant's contention for application of res judicata or collateral estoppel is without merit.

A. Promissory Note of June 30, 1984.

One of the Debtor's business dealings involved the formation of a bank in Arizona called First National Bancorp, Inc. This activity involved several other investors, but the Debtor was the principal organizer of the effort. Toward the completion of the creation of the bank, the Debtor advanced to the bank from his funds the sum of $100,000.00 as "seed" money in 1984. A promissory note (Ex. 44), entitled "Convertible Promissory Note", ostensibly dated June 30, 1984, for $100,000.00 was made out in favor of Eldon E. Kuhns and signed by the proposed president of the new bank, Norman C. Dean. Dean's signature on the note, a two page document, was attested to by Robert Kennedy, an attorney in Arizona involved in legal matters in the forming of the bank. Dean's testimony acknowledged that he signed the instrument and it was made out in favor of Eldon E. Kuhns. Kuhns testified he gave the note, and therefore, the right to the proceeds, to his wife in 1985 before the note came into existence. Such testimony is simply not credible because Dean, by agreement with the Federal Reserve Board, was not capable of any involvement with the Bank after December 1, 1984. JoAnn Kuhns stated that she was unaware of the existence of the note until she found it in a safety deposit or lock box kept in the Kuhns' family home when she was responding to a discovery request in this adversary proceeding. Her sole explanation as to why the present note shows on Page 1 as payable to JoAnn Kuhns is that the note was purchased for her by her husband. She has no recollection as to when the note was placed in the lock box. Both Kuhns have access to the box, and there is no written agreement in evidence which delineates the ownership contents of the box.

■ The note as originally prepared has been materially changed from the time of its first execution. The present exhibit 44 states in pertinent part that "for value received, First National Bancorp, Inc.—promises to pay to the order of JoAnn C. Kuhns—the principal sum of One Hundred Thousand Dollars and no/100 ($100,000.00) Dollars". The first page is dated June 30, 1984, as is the second signature page. In fact, the first page of the note is a substituted page. Plaintiff called an expert forensic document examiner as a witness who testified that the first page of the note was a substitution made sometime after January, 1985. His testimony and opinion, which I find credible, and were not contradicted, show from the water mark that paper of the first page of the note was not produced by the paper company until after January 1, 1985, while the second page of the note is paper produced in 1984. Different typing characteristics are also present between the two pages which indicate the first page was typed on a different typewriter than the second page, which also bears a paper clip imprint not found on the first page. Kuhns concedes the first page may have been substituted but could not explain how, when or why it was done. I find from all of the testimony concerning the creation of the note that the present note made payable to JoAnn Kuhns is a fraud for the following reasons. First, contrary to the express provision of the note, (for value received), JoAnn Kuhns never loaned the payee any money and therefore never gave any value. All value came from Eldon E. Kuhns. Second, page

one of the note, dated June 30, 1984, could not possibly have been prepared on that date because the paper on which it was typed was not even in production in 1984. Third, Dean, the signator on the note, never signed a note payable to JoAnn Kuhns. The only note he signed was payable to Eldon E. Kuhns. Fourth, by various exhibits and testimony of an employee of United Bank of Denver, Eldon Kuhns, as late as March 1986, represented to that Bank in an effort to secure financing of the Arizona bank, that the $100,000.00 convertible note was owned by him, not his wife. Indeed, on Kuhn's financial statement dated July 11, 1985, he personally amended the statement in his own writing to disclose a note receivable from "FN Bancorp" for "$100,000.00". Further, the private placement memorandum prepared by E. E. Kuhns, gives the precise and exact details of the substance of the June 30, 1984, note, including its convertible feature of 40,000 shares of stock, thus showing Debtor as the owner.

Kuhns maintains the note was a gift to his wife. The facts above stated indicate it is a bizarre manner in making a gift. I conclude the note was changed to reflect JoAnn Kuhns as the ostensible owner when in fact the true and lawful owner of the note is E. E. Kuhns, the Debtor. The Debtor's effort to change the note, whether either before or after bankruptcy, is sham and deceit. The Bank never made or executed a note payable to JoAnn Kuhns. In this regard, I reject Debtor's testimony as not credible that he made the gift through a letter of July 18, 1985, to Kennedy, in which he enclosed another note, dated July 1, 1984, payable to JoAnn Kuhns for $100,000.00 from the Bank. That note was never executed, and provides no basis for establishment of a legal contract between the parties. Indeed, the only note on which the Debtor now relies is the June 30, 1984, sham, not the note mailed in 1985, bearing a 1984 date.

■ Second, if in fact a gift was contemplated of the note, the gift fails under Montana law. Except for the page substitution, there is no writing to establish a gift. It has long been established in Montana that to make a gift there must be (1) an intention on the part of the donor to make the gift; (2) delivery by the donor of the subject matter of the gift, and (3) acceptance of the gift by the donee. *In re Brown's Estate*, 122 Mont. 451, 206 P.2d 816, 819 (1949). *Brown*, and its progeny, *Faith Lutheran Retirement Home v. Veis*, 156 Mont. 38, 473 P.2d 503 (1970), make clear that intention to make a gift is not enough, there must be delivery so as to divest dominion and control over the property in the donor and acceptance by the donee. The elements of delivery and acceptance have not been proven by the Debtor. I find that the note was placed in a box in the family home over which the Debtor has as much control as his wife, and therefore Debtor did not unequivocally relinquish control. In fact, the Debtor, as shown above, treated the note as his property when dealing with a third party, United Bank of Denver. And, Kuhns, the Debtor, took the interest payments made on the note in 1985 and deposited them in his account. Further, I find the wife never accepted the gift. She had no knowledge of the note until pursued for its production upon discovery in this case. In sum, she never knew it existed. Thus, the presumption she accepted the gift has been overcome. The case authority relied upon by the Debtor, *Malek v. Patten*, 208 Mont. 237, 678 P.2d 201 (1984), is inopposite on the facts and legal question involved in that case, which involved creation of joint bank accounts by written instruments.

I conclude this Plaintiff is entitled to recover from JoAnn Kuhns the sum of $100,000.00 plus interest due on the promissory note issued by the First National Bancorp, Inc. to E. E. Kuhns.

B. Deferred Compensation Due From MBI.

MBI and the Debtor entered into a deferred compensation contract in 1977. The Debtor was chief executive officer of MBI, until he resigned on December 18, 1985. On December 21, 1984, the board of directors of MBI approved a schedule for deferred compensation accruals and setoffs

of premiums on insurance paid by MBI. Upon litigation of the matter in *Kuhns, et al. v. MBI, et al.*, noted above, the setoff was rejected. Kuhns employment with MBI terminated as of June 30, 1986, based on his December resignation. On that date, Kuhns wrote a letter to MBI directing that his deferred compensation payments be made to his wife. In his Statement of Affairs filed with his Bankruptcy Petition, Kuhns states:

"JoAnn Kuhns, wife of the Debtor, was designated beneficiary of the Montana Bancsystem, Inc. deferred compensation plan June 30, 1986. This was not a transfer of property but is listed for the purpose of full disclosure."

Kuhns testified in this case that the letter of June 30, 1986, was not a transfer of the funds to his wife. Nevertheless, Kuhns maintains he gave the fund to his wife in 1982 as part of his estate planning. No writing was produced in this case to verify such gift. Further, none of the minutes of MBI reflect such gift in 1982. Contrary to such oral gift, Kuhns' March 31, 1985, Financial Report (Ex. 40) lists the deferred conpensation fund as an asset valued at $600,000.00, under the listing of Other Assets Not Recorded in Financial Statements. Also listed is a Pioneer Western Pension, which was included as an asset in Debtor's Bankruptcy Schedules.

The letter of June 30, 1986, to MBI states:

"In accordance with Paragraph 2(b) of my employment agreement dated June 23, 1977, I do hereby appoint and designate JoAnn C. Kuhns as the beneficiary of the payments both during my lifetime and in the event of my death."

Paragraph 2(b) of the employment contract of July 23, 1977, provides:

"(b) *Deferred Compensation.* As additional consideration for Employee's agreement to enter into this Employment Agreement and his performance of services here-under, the Employer and its affiliates shall pay to Employee or a designated beneficiary as deferred compensation an amount calculated in accordance with the formula set forth in Exhibit B hereof, which amount shall be computed and paid as if Employee had continued his employment hereunder for a period of five years and notwithstanding the earlier termination of this Employment Agreement for any reason. Said amount shall be payable in equal monthly installments for such term as is determined in accordance with the formula set forth in said Exhibit B. Such payments shall begin on the first day of the month following the termination of full-time employment of Employee except that in no event shall such payments begin prior to June 4, 1983. Employee hereby designates *JoAnn C. Kuhns* as the person(s) to whom payment of deferred compensation shall be made in the event of Employee's death. Employee shall hereafter be free to amend, alter or change such designation, provided, however, that any such amendment, alteration or change shall be made by a writing in a form satisfactory to the Management Committee."

On January 9, 1986, the Debtor wrote MBI that "As of December 31, 1985, the balance in the deferred compensation account due E. E. Kuhns will total $618,832.00". On May 23, 1986, in pleading with MBI to settle their differences, the Debtor wrote to MBI to "Coincide [his separation date] with my deferred compensation arrangement", then he detailed various proposals for payment of "my" deferred compensation. His wife, or the gift to his wife, is not mentioned in any of such correspondence.

Under Section 541(a)(1) of the Code property of the estate is defined as "all legal or equitable interests of the Debtor in property as of the commencement of the case", wherever located or by whomever held. What constitutes a legal or equitable interest of the estate is to be broadly construed. *In re Daniel*, 771 F.2d 1352, 1360 (9th Cir.1985). Kuhns conceded he has never transferred his ownership interest in the deferred compensation plan to his wife, so that the fund is evidently still owned by Kuhns, and was so owned by Kuhns on the

date of the filing of his Chapter 11 petition. Furthermore, the findings of fact entered by the federal district court in *Kuhns v. MBI*, state Kuhns assumed there would be an immediate designation of his wife as owner and beneficiary of the Equitable life policy and "as beneficiary of the deferred compensation as originally planned", but no finding is made that the ownership ever transferred to JoAnn Kuhns. Finally, under the deferred compensation provisions of the employment contract set forth above (2b), a fair reading of that provision provides the benefits are to be paid to Kuhns during his lifetime and then to his designated beneficiary (JoAnn C. Kuhns) upon his death. Clearly, the Debtor had the right to change his designated beneficiary for payments "in the event of Employee's death", but he never did transfer his right to receive the funds during his lifetime—and could not do so under Section 2(b).[3]

■ But could he gift to his wife, the right to receive such payments and did he so make such gift? Clearly, Kuhns could make a gift of such payments to his wife. To do so, he had to satisfy Montana law as stated in *Brown*, supra. The letter of June 30, 1986, is the Debtor's evidence that the gift was made. Following such letter, Kuhns never listed the deferred compensation plan as an asset, nor did he schedule such right to payment as an asset in this case. JoAnn Kuhns herself wrote letters to MBI in July, 1986, demanding payment, and received payments from MBI, although the amount was contested. Therefore, she obviously accepted the gift and treated it as her own property. The gift to his wife of the right to payments from MBI during his lifetime satisfies the requirements of Montana law. The gift was completed. *See,* e.g., *Faith Lutheran Retirement Home v. Veis,* supra, which holds precise words of transfer are not required, and in fact a writing may not be necessary to make a gift. In this case, the writing of

June 30, 1986, suffices to make the gift, and his wife's acceptance is clear.

■ Any argument that the gift in 1986 was a fraudulent transfer under § 548(a)(2) (constructive fraud) must also fail for the uncontroverted testimony from the Debtor's expert witness, not rebutted by the Plaintiff, is that Kuhns was solvent at the time, based upon an analysis of Debtor's balance sheet of assets and debts. *In re Koubourlis*, 869 F.2d 1319, 1320 (9th Cir. 1989), holds:

> "Inability to pay debts in the ordinary course of business is insufficient to establish insolvency—there must be evidence that assets, at fair evaluation, exclusive of exempted property, are exceeded by the debts."

The same is true under the preference Section 547 of the Code. *In re Sierra Steel, Inc.,* 96 B.R. 275, 277 (9th Cir. BAP 1989) (In order to prevail on a preference claim, the trustee must establish that the transfer was made while the debtor was insolvent). As to § 548(a)(1), dealing with fraudulent transfer made with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became on or after the date that such transfer was made or such obligation was incurred, indebted", thereby leaving out insolvency as a test, proof of actual intent is missing on this issue. Debtor did not contemplate bankruptcy until August, 1986, when his income stream was severly eroded one month earlier, and current obligations thus went unpaid. Coupled with this fact was his inability to arrive at an agreement with MBI in August, 1986, to purchase his extensive stock holdings in that company. The test of actual fraud is set forth in *In re Bell v. Beckwith,* 64 B.R. 620, 628 (Bankr.N.D. Ohio 1986):

> "Under these provisions, [548(a)(1) and (c) ], a trustee may avoid any transfer of a debtor's property which occurs within one year prior to the filing of the Peti-

---

**3.** I reject the Plaintiff's argument that the non-assignment clause in the employment contract applies to this case. The Plaintiff argues that the Debtor could not assign his vested deferred compensation without consent of MBI. The argument fails for two reasons. First, the non-assignment clause is limited to the the entire contract, thus contemplating the personal services of the Debtor and, second, the provision expired in 1982, by the express terms of the contract.

tion, and which was made with the intent to hinder, delay, or defraud creditors. *Reiber v. Baker (In re Baker)*, 17 B.R. 392 (Bkcy.W.D.N.Y.1982). When seeking to avoid a transfer under this provision, the trustee must be able to show that the transfer was accomplished with actual intent to defraud. *See, Toledo Trust Co. v. Peoples Banking Co. (In re Hartley)*, 52 B.R. 679 (Bkcy.N.D. Ohio 1985), *Varon v. Trimble, Marshall & Goldman (In re Euro–Swiss International Corp.)*, 33 B.R. 872 (Bkcy.S.D.N. Y.1983)."

I conclude the Plaintiff has failed to establish the requisite fraudulent intent to void the gift of the deferred compensation due from MBI. There simply is no evidence of a general scheme of the Debtor stripping himself of all assets to gain advantage over his creditors by transfer of this asset at the time it was transferred. The most that can be said is the Debtor relinquished his financial ability to pay his current debts at a time when his compensation was substantially eroded. But, all of this would have been irrelevant had he successfully negotiated a stock buy-out with MBI. By June 30, 1986, such was still possible. From the foregoing, I find the Plaintiff's Complaint to recover the deferred compensation payments due from MBI is without merit.

### C. The Equitable Life Insurance Contract.

Closely aligned with the deferred compensation issue is a contract of whole life insurance issued by The Equitable Insurance Company in December of 1982. From the date of its issuance until September 16, 1986, Policy No. N82 450 926 was owned by MBI, which was also the beneficiary under the contract. MBI paid all premiums on the policy. In fact, MBI pledged the policy throughout the term of its ownership as collateral for loans of MBI, and the liens on said contract were not released until August, 1986. It is clear that MBI had intended following termination of Kuhns employment to transfer the policy to Kuhns, but such request of transfer by MBI to JoAnn Kuhns was not perfected until September 16, 1986, just one week before the Debtor

filed his Chapter 11 petition. By this date, E.E. Kuhns had consulted bankruptcy counsel upon suffering loss of income which resulted in his inability to pay his obligations, and the stock purchase agreement with MBI had failed to materialize.

In the spring of 1986, MBI signed transfer documents to the insurance carrier to transfer the policy to the Debtor, and the Debtor upon learning such fact, contacted counsel for MBI demanding such transfer be made to his wife, which MBI ultimately succeeded in doing. The Debtor claims the transfer to his wife of the policy was in accordance with his estate plan of 1982, but the record is clear that no transfer in fact occurred until 1986. That estate plan never was followed through to completion by the Debtor. Delivery of the policy to satisfy the gift law in Montana was therefore not made until shortly before the Chapter 11 case was filed after bankruptcy had been contemplated in August, 1986. Indeed, MBI could not have transferred the policy in 1982 or until August, 1986, without release of the lienholders. MBI's activities surrounding the transfer of the policy formed a basis for part of the judgment against MBI in the *Kuhns v. MBI* Federal District Court action. The Court there found the Debtor was to have the right to designate the policy's owner and beneficiary, which was to be his wife, J. Kuhns but the policy was never changed to reflect such interest. As a result the Court found MBI received the benefits of the policy, and therefore rejected the claim of MBI to offset the premiums against the deferred compensation benefits. Finally, no consideration passed between the Debtor and his wife for transfer of the policy.

■ On this issue, I find the Plaintiff has sustained its burden of proof showing actual intent to defraud Kuhns' creditors by transfer of the life insurance contract within one year of the filing of the Bankruptcy Petition. Under § 548(a)(1) of the Code, the policy is thus recoverable as an asset of the Debtor's estate. Unlike the situation concerning the deferred compensation benefit, when the transfer of the policy was made just days before the date

of bankruptcy, Kuhns knew he had to seek Chapter 11 relief. Plaintiff cannot recover under § 548(a)(2), because there is no proof that Kuhns was insolvent, or rendered insolvent, by reason of the transfer. Rather, Plaintiff is entitled to recover on the basis that there has been a showing of actual intent to defraud his creditors by reason of a transfer of property for no value within one year of the petition date. Certain "badges of fraud" described in *In re Compton*, 70 B.R. 60, 62 (Bankr.W.D.Pa. 1987), are proof of Debtor's actual intent in the case *sub judice*.

"This Court has previously relied upon various factors, referred to as 'badges of fraud', which indicate fraudulent intent. *See Matter of Brooks*, 58 B.R. 462 (Bankr.W.D.Pa.1986). These indicia of fraud include:

1) an absence or negligible amount of consideration;

2) the value which the transfer took from the estate;

3) The time in which the transfer occurred;

4) the relationship between the debtor and the transferee; and

5) the debtor's financial condition at the time of the transfer.

*Id.* at 465–66. *See also, In re Peery*, 40 B.R. 811, 815–16 (Bankr.M.D.Tenn.1984) and *In re Rubin*, 12 B.R. 436, 442 (Bankr.S.D.N.Y.1981). Indeed, several courts, including this Court, have found a transfer for little or no consideration to a close relative is clear evidence of fraudulent intent. *See Matter of Brooks*, supra; *In re Butler*, 38 B.R. 884 (Bankr.D. Kan.1984); *In re Nazarian*, 18 B.R. 143 (Bankr.D.Md.1982); *Matter of Loeber*; 12 B.R. 669 (Bankr.D.N.J.1981); *In re Rubin*, supra."

Of course, since the Debtor will not voluntarily testify as to fraudulent intent, the Court must rely on all of the facts and surrounding circumstances of the transfer. *Matter of Brooks*, supra, at 465. Actual intent is not easy to prove, so, of necessity, an inference of actual intent may be drawn from convincing evidence of extrinsic fraud. *In re Butler*, supra, at 888.

Kuhns argues that the policy was to be transferred to his wife in 1982 as part of his tax planning. The clear and convincing evidence shows that in 1982 Kuhns was in comfortable financial condition, with substantial income, but by September, 1986, the date of actual transfer, his financial condition had been sharply reversed both by his loss of substantial income and his inability to reach agreement with MBI on the purchase of his substantial stock holdings in that company. His tax planning developed in 1982 had thus substantially changed by late 1986. Next, no value passed between Kuhns and his wife for the insurance policy transfer. From that fact, a substantial asset of $224,000.00 in cash surrender value was lost to the creditors of Debtor's estate. The transfer, therefore, hindered or delayed his creditors. By the end of August, 1986, Kuhns' income was not sufficient to pay his existing debts. That is why he filed his Chapter 11 case. By September 15, 1986, he had consulted bankruptcy counsel and his income flow was restricted so his financial condition was precarious. A few days later on September 23, 1986, he filed for relief under Chapter 11. The badges of fraud are satisfied under these facts by clear and convincing evidence. I therefore conclude that the Debtor transferred the Equitable life insurance policy to his wife without fair consideration or value on September 15, 1986, with the actual intent to hinder and delay his creditors. The transfer is void under § 548(a)(1) of the Bankruptcy Code.

### D. The Arizona Residence Payments.

In January, 1985, Debtor and his wife borrowed $203,000.00 from Century Bank of Phoenix, Arizona, to purchase a family residence and furniture in Scottsdale, Arizona. The home was purchased for $189,000.00. Shortly thereafter, on January 15, 1985, debtor signed and recorded a "disclaimer deed" to the home, thereby divesting himself of any legal interest in the property. The home was thus titled in the name of JoAnn Kuhns, subject to the mortgage of Century Bank. The home was sold and loan retired in August, 1988, with all net proceeds passing to JoAnn Kuhns.

The Century Bank note provided for quarterly payments of $3,609.00 for interest due on the note. The Debtor made all of such payments, including insurance and taxes up to the time the home was sold. Thus, from the date of the Bankruptcy Petition on September 23, 1986, through August 1988, the Debtors made seven post-petition payments of interest totaling $25,-263.00.

At all times material hereto, Kuhns was paid a housing allowance of $1,600.00 by First National Bancorp as a condition of his employment, to cover his expected housing or rental costs while in Arizona. The Debtor contends that the quarterly payments to the Century Bank were equivalent value for his use of the home while on business in Arizona. Debtor testified it would have been more expensive to rent other quarters than to make the interest payments on his wife's home. Those factors are irrelevant when § 549 is invoked by the Plaintiff.

Under § 549 of the Code, it is provided:

"(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case;"

Debtor never sought nor received any Court order post-petition seeking authority to make payments from the estate for the benefit of his wife. Under Section 1107 of the Code, a Debtor-in-Possession, such as E.E. Kuhns, is acting as a fiduciary for his unsecured creditors, and it was incumbent upon him as such fiduciary to seek authority to pay said funds for the benefit of his wife, when such payments are made out of the ordinary course of his business.

*In re Energy Resources Co. Inc.,* 871 F.2d 223, 229 (1st Cir.1989), holds:

"(2) The debtor-in-possession (or other trustee) is no longer free to spend the debtor's money, rather he must act as a 'fiduciary' for the benefit of the creditor, 11 U.S.C. § 1107 (1982 & Supp. IV, 1986); *see, Wolf v. Weinstein,* 372 U.S. 633, 649–50, 83 S.Ct. 969, 979, 10 L.Ed.2d 33, (1963), and, he must act in accordance with orders that the bankruptcy court may issue, 11 U.S.C. §§ 105(a), 1141(a), 1142(b) (1982 & Supp. IV 1986)."

*In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 802–03 (9th Cir.1987), follows the same theme in holding:

"Once a debtor files a bankruptcy petition, the property it then possesses, as well as funds acquired thereafter, become the property of the estate. 11 U.S.C. § 541(a). The debtor-in-possession is not free to deal with the property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee. 11 U.S.C. § 1107; S.Rep. No. 989, 95th Cong.2d Sess. 116, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5902.

\* \* \* \* \* \*

A debtor-in-possession is required to obtain the court's permission to make payments other than in the ordinary course of business, and notice to creditors must be given to creditors. 11 U.S.C. 363(b), (c); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1225–26 (5th Cir. 1986).

\* \* \* \* \* \*

The debtor-in-possession is not free to pay whomever it chooses before the plan is confirmed, as this could defeat the priority scheme established by Congress."

*In re Continental Air Lines, Inc.,* supra, held that proposed leasing of two aircraft was outside of the ordinary course of debtor's business and thus required approval under § 363(b). The same is true in this case. The ostensible leasing by the Debtor of his wife's home post-petition to be paid out of estate funds was not in the ordinary course of Debtor's business, and required Court authorization, after notice to creditors. None of such steps were taken by the Debtor in this case.

4 *Collier on Bankruptcy,* ¶ 549.02, pp. 549–5 and 6 (15th Ed.), states:

" \* \* \* the trustee may avoid post-petition transfers of property of the estate

that are either unauthorized or that are authorized by Section 303(f) or Section 542(c)."

Section 303(f) deals with an involuntary case and § 542(c) deals with transfers to persons without knowledge of the commencement of the case, so that both these Code Sections have no application to the case at hand.

*In re Coast Trading Co., Inc.*, 744 F.2d 686, 692 (9th Cir.1984), holds:

"Coast, [debtor-in-possession], as trustee, could not sell or transfer any rights it had or might acquire in the grain without notice and a hearing unless such transfers were in the ordinary course of business. 11 U.S.C. § 363(b) (1982); *See also*, 11 U.S.C. § 549 (1982) (trustee can avoid unauthorized post-petition transfers)."

The Debtor's unauthorized post-petition payments of $25,263.00 for the benefit of his wife are recoverable by the estate pursuant to § 549 of the Code. I reject Debtor's argument that such payments were made in the ordinary course of his business for fair equivalent value because the evidence fails to sustain such position. In truth, the Debtor was advancing his wife's interest, not the business of the Debtor or his employer bank.

### Conclusion

On the basis of the foregoing, the Plaintiff shall recover from JoAnn Kuhns, for the benefit of the estate, the following property:

1. All proceeds paid on promissory note of June 30, 1984, from FN Bancorp, Inc.;

2. All right, title and interest in life insurance Policy No. N82 450 926 issued by The Equitable Life Assurance Society of the United States, including the cash surrender value of said policy;

3. The sum of $25,263.00 for post-petition transfers.

The Plaintiff is denied all other relief prayed for in the complaint in this adversary proceeding.